OPINION OF THE COURT
William D. Friedmann, J.
This case gave birth to a very novel jury proposal, namely, whether a jury may condition or structure its damage verdict for the benefit of the plaintiff (CPLR 4111). It is presented in the context of plaintiffs’ dissatisfaction with the adequacy of their jury damage verdict. They have consequently moved for judgment notwithstanding their verdict or, in the alternative, for a new trial (CPLR 4404, subd [a]).
RELEVANT BACKGROUND
This Supreme Court bifurcated trial was held in the Civil Court (CPLR 325, subd [d]). Liability resulted in a verdict absolving certain defendants and holding two remaining defendants (Alison Mortgage Investment Trust and Goodnor Construction Corp.) liable to the plaintiffs on the basis of combined liability of 75%, with comparative fault assigned to the plaintiffs at 25%. Thereafter, the case *854 proceeded to trial before a different jury on the issue of damages. It ended in a verdict resulting in a gross figure, before reductions, to plaintiff Sylvia Green for $7,500 and to her husband Isidore Green for $2,500, being a net award to the plaintiffs of $7,500 (75% of the total figure of $10,000).
TRIAL CONTENTIONS
In relevant summary, plaintiffs, through Dr. Lester Lieberman, a highly qualified orthropedic surgeon, established that Mrs. Green had been under his care since her accident (November, 1975 to date) for an injury to her right knee. Dr. Lieberman testified that in his opinion Mrs. Green had suffered a torn medial meniscus of the right knee, but that it was not the type of injury that required immediate surgery. Sometime in 1975 or 1976 Dr. Lieberman suggested surgery to “repair” Mrs. Green’s knee. Mrs. Green refused the operation. In 1979 Dr. Lieberman suggested a new operating procedure which would maintain and prevent future deterioration of the knee. The fee for the second suggested operation would have been $2,000, and the estimated cost of a one-day hospitalization, $2,800, making a total cost for the operation and hospitalization of $4,800. Again, Mrs. Green declined the operation.
Although there was no medical testimony presented which challenged Dr. Lieberman’s opinion as to the existence of a torn meniscus, defendants through cross-examination of Dr. Lieberman sought to develop their contention that Mrs. Green had never suffered a torn meniscus, but had only suffered a mild sprain, which healed in a few weeks after the accident. Further, that if there were any tears of the meniscus, they were due to fraying and caused by a pre-existing osteoarthritic condition.
THE JURY’S DETERMINATIONS
Approximately one hour and 15 minutes after the jury began to deliberate on the issue of damages the following message was received by the court:
“Your Honor,
“We the jury, have decided for the plaintiff as follows:
*855 “Mrs. Green $6,000.00 “Mr. Green 2,000.00 and
4,800.00 for Mrs. Green to be held in escrow as ordered by the court for a period of three years, if and when the plaintiff decides to have the corrective surgery on her right knee as suggested by Dr. Lieberman.”
The message from the jury, delivered to the court in chambers did not constitute a verdict, being merely a notification to the court that the jury was ready to report their verdict in open court (Labar v Koplin, 4 NY2d 547, 550; Gould v Baldwin, 55 Misc 2d 917).
Thereafter, the note was read outside the presence of the jury into the record and marked as a court exhibit. After discussing the jury’s note with both counsel and following cursory research, the jury was brought into the courtroom and reinstructed (with the concurrence of both counsel) that there was no authority in law for their projected conditional damage award and that they should continue their deliberations and make a decision as to a sum of money, if any, to be awarded to the plaintiffs now.
Following reinstruction, the jury deliberated for approximately 10 minutes and returned with an award for Mrs. Green of $7,500 and Mr. Green of $2,500. This raised Mrs. Green’s award (minus the escrow provision) from $6,000 to $7,500 and Mr. Green from $2,000 to $2,500 or a total increase of $8,000 to $10,000. Thereafter, oral postverdict motions on the grounds of inadequacy were made by plaintiffs’ counsel and denied by the court (CPLR 4404, subd [a]).
THE LAW
It is beyond question that a trial court in this State has the power to vacate a judgment on a motion or on its own initiative (Micallef v Miehle Co., Div. of Miehle-Goss Dexter, 39 NY2d 376, 381). This is so regardless of whether oral motions were made and/or denied at the close of the case (CPLR 4404; Advisory Committee Notes, NY Cons Laws Serv, Book 41, CPLR 4404, p 332). Any confusion *856 with respect to postverdict motion practice was removed following the adoption of CPLR 4404 (posttrial motion for judgment and new trial) and CPLR 4406 (single posttrial motion) which states: “In addition to motions made orally immediately after decision, verdict or discharge of the jury,, there shall be only one motion under this article with respect to any decision by a court, or to a verdict on issues triable of right by a jury; and each party shall raise by the motion or by demand under rule 2215 every ground for post-trial relief then available to him.”
THE ABORTED “NOVEL VERDICT”
The jury’s attempt at fashioning a verdict containing a provision requiring the retaining of money in escrow for Mrs. Green to have a meniscectomy clearly deserves to be the highlight of this decision.
At a time when the very existence of the jury system is under serious attack (see, for example, Weitz, Preservation of the Jury System Seen as Essential, NYLJ, May 3,1982, p 39, col 3), this particular jury’s action gives pause for some needed reflection and analysis. In the case at bar, this jury’s insight and commonsense approach in attempting to structure a damage award, meeting the operative facts of the case, is both a serious argument for the retention of the jury system, as well as for the extension of the role of the jury (and the court when acting as the trier of the facts) into the structuring of damage awards following trial. Such structuring is, of course, a common procedure used by the courts in pretrial settlement of major tort litigation.
When presented with the jury’s first attempt at reaching a verdict and the necessity of an immediate reaction, this court determined that such a conditional verdict was unacceptable under CPLR 4111 or, for that matter, under any other known statutory provision or decisional law. However, after careful reflection and extensive research, this court’s original rejection of the jury’s inventive verdict seems less sound and more debatable.
Although CPLR 4111 which governs general and special verdicts does not expressly sanction conditional awards such as the one suggested by this jury, neither does it prohibit such determinations. CPLR 4111 covers the tradi *857 tional general verdict (for plaintiff in specific sum), the special verdict (to assist in future litigation) and the general verdict accompanied by written interrogatories which is a kind of hybrid between the general and special verdicts or the itemized verdict in medical malpractice cases (see Siegel, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, 1981-1982 Pocket Part, CPLR 4111, p 93).
Why, with proper court guidance, shouldn’t CPLR 4111 be construed to authorize the use of the jury or court, when acting as trier of the facts, to assist in the structuring of damage awards? With the established relevancy of estate, insurance and tax planning, and other considerations deemed vital in the structuring of pretrial settlements in major tort litigation, why shouldn’t the trier of fact be given a similar role in the structuring of posttrial damage awards?
This court in answer to both self-queries must conclude that no good reason exists for not extending the use of the jury into this area and that such use might hold great promise. Keeping in mind the old adage that there is no precedent for anything until it is done for the first time, and based upon its “post-mortum” research and reflection, this court is of the opinion that it probably did have the power to accept this jury’s first conditional “verdict” — and specially had both parties consented to such procedure.
When a court is in error and given the rare opportunity to correct or modify its own determination, it is duty bound, in the interest of justice, to take corrective action (Cohen v Hallmark Cards, 45 NY2d 493; Facteau v Wenz, 78 AD2d 931). Not only are such corrective determinations by trial courts viewed liberally on appeal (see Mann v Hunt, 283 App Div 140), but, also, they will not be disturbed unless found to be unreasonable or reached with impermissible court interference with the jury’s fact-finding function (Ellis v Hoelzel, 57 AD2d 968).
THE “ACCEPTED VERDICT” UNDER ATTACK
Turning away from the jury’s rejected attempt to fashion a conditional verdict, attention is focused upon the jury’s second action, the verdict accepted by the court which is now challenged by plaintiffs.
*858 Plaintiffs contend that this verdict is not supported by a fair interpretation of the facts, and therefore, this court should order an increase in damages, or in the alternative, a new trial as to damages. The argument is predicated upon the alleged permanent and painful nature of Mrs. Green’s injury and is keyed to other unreported but recent torn meniscus cases. In these cases the plaintiffs recovered amounts significantly greater than Mrs. Green (Leahey v Turner Constr. Co., Supreme Ct, Bronx County, Index No. 7263/77; McCord v City of New York, Supreme Ct, NY County, Index No. 8428/79; Vessica v City of New York, Supreme Ct, Bronx County, Index No. 15,188/78).
Even though this court may have disliked the verdict, or if it had been the trier of the facts, it would have been more generous to plaintiffs, is not sufficient grounds to interfere with the verdict (Mann v Hunt, supra). Regardless of this court’s feelings on such matters, it does not logically follow that the jury’s parameter of damages in either their aborted effort or in their final verdict could be called grossly inadequate as to be unconscionable or not supported by a fair interpretation of the facts (McDowell v Di Pronio, 52 AD2d 749; Yandian v Merlis, 34 AD2d 582). According to this court’s recollection and notes, Dr. Lieberman was believable when he opined that Mrs. Green had suffered a torn medial meniscus of the right knee. The jury’s “aborted verdict” predicated upon Dr. Lieberman’s testimony clearly indicates that the jury also accepted that diagnosis. However, the trial record contains a number of evidentiary flaws which could have given the jury doubt as to the degree of permanency or as to the painful nature of the injury. For example, Mrs. Green’s cardiologist, Dr. Julie Stein, testified that he was unaware of Mrs. Green’s knee condition or her long-term treatment by Dr. Lieberman. That although Mrs. Green had a heart condition, for which he (Dr. Stein) was treating her during this same period of time, that the two operative suggestions of Dr. Lieberman were never discussed with him. It seems odd to the court and might have entered into the thinking of the jury that with the existence of a serious heart condition, that Dr. Stein should have been aware of Mrs. Green’s knee condition, and the suggestions of operations thereon. *859 Further, that Dr. Stein’s lack of knowledge about the injury and the complete lack of co-ordination between Doctors Stein and Lieberman gave reasonable cause to downplay the plaintiffs’ contentions of limiting permanency and persistent pain.
COMPROMISE
When the accepted verdict is placed in context, coming approximately 10 minutes after the court’s rejection of the jury’s inventive “aborted verdict”, and the instruction by the court that they must make a present verdict and not one with conditional provisions, there seems to be strong suggestion that the accepted jury verdict was the product of a quick compromise (R & R Wrecking Co. v City of New York, 53 AD2d 859). A verdict which is the result of a compromise should not be permitted to stand (Figliomeni v Board of Educ., 38 NY2d 178; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4402.01; 8 Carmody-Wait 2d, § 58.8, p 323). Taking a close look at the accepted verdict, it eliminated the $4,800 escrow award and raised the “now” award to Mrs. Green from $6,000 to $7,500, and the award for Mr. Green from $2,000 to $2,500, raising a total award from an original $8,000 for Mr. and Mrs. Green to a total of $10,000. It can be reasonably concluded that when the jury’s $4,800 for a future operation escrow was rejected by the court, that the jury promptly compromised their inventive thoughts and ideas and quickly awarded the plaintiffs approximately one half, or a little less than half of the $4,800, which sum of money the jury originally wanted to be set aside had the court been amenable to their escrow idea, and had made the appropriate suggestions to enable the setting up of such an escrow arrangement.
CONCLUSIONS
This court recognizes that discretion to affect damages by ordering conditional new trials should be exercised sparingly, particularly in a case where damages cannot be fixed with precision, such as in a personal injury case as before the court (James v Shanley, 73 AD2d 752; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.10) and that it is without power, on its own motion, to unconditionally increase a verdict (O’Connor v Papertsian, 309 NY 465).
*860 However, the court is now faced with a situation where the original “aborted verdict” would have brought the plaintiff a higher recovery ($2,800 difference). Convinced, as this court is, that it should have saved or at least modified the aborted verdict to remove the mandatory operation requirement and still kept the combined dollar award, the court in all fairness must conclude that the accepted verdict was clearly the result of a compromise. Therefore, resort should be made to the procedure of a conditional new trial to correct such a situation.
Accordingly, plaintiffs’ motion to set aside the verdict on the grounds of inadequacy is denied.
However, following the admonition of the Court of Appeals in Micallef v Miehle Co. (39 NY2d 376, supra) and looking towards its own “common sense, experience and sense of fairness” this court will set aside the verdict on the grounds that the “aborted verdict” was erroneously rejected, and that the accepted verdict was tainted by compromise, unless within 10 days from the entry of this order the defendants stipulate to increase the damage award to Mrs. Green by the sum of $2,800, in which event the court’s own motion will also be denied. If this verdict is set aside, upon failure of defendant to agree to increase the award, then this cause is remitted to the Day Calendar for Trial Term, Part I, of this court, on September 10, 1982, for retrial.