Cooke, J.
 

 The time has come to depart from the patent danger rule enunciated in
 
 Campo v Scofield
 
 (301 NY 468).
 

 This action was initiated to recover damages for personal injuries, allegedly resulting from negligent design and breach of an implied warranty. Paul Micallef, plaintiff, was employed by Lincoln Graphic Arts at its Farmingdale plant as a printing-press operator. For eight months he had been assigned to operate a photo-offset press, model RU 1, manufactured and sold by defendant Miehle-Goss Dexter, Inc., to his employer. The machine was 150 feet long, 15 feet high and 5 feet wide and was capable of printing at least 20,000 sheets an hour. Then, while working on January 22, 1969, plaintiff discovered that a foreign object had made its way onto the plate of the unit. Such a substance, known to the trade as a "hickie”, causes a blemish or imperfection on the printed pages. Plaintiff informed his superior of the problem and told him he was going to "chase the hickie”, whereupon the foreman warned him to be careful. "Chasing a hickie” consisted of applying, very lightly, a piece of plastic about eight inches wide to the printing plate, which is wrapped around a circular plate cylinder which spins at high speed. The revolving action of the plate against the plastic removes the "hickie”. Unsuccessful in his first removal attempt, plaintiff started anew but this time
 
 *380
 
 the plastic was drawn into the nip point between the plate cylinder and an ink-form roller along with his hand. The machine had no safety guards to prevent such occurrence. Plaintiff testified that while his hand was trapped he reached for a shut-off button but couldn’t contact it because of its location.
 

 Plaintiff was aware of the danger of getting caught in the press in "chasing hickies.” However, it was the custom and usage in the industry to "chase hickies on the run”, because once the machine was stopped, it required at least three hours to resume printing and, in such event, the financial advantage of the high speed machine would be lessened. Although it was possible to have "chased the hickie” from another -side of the machine, such approach would have caused plaintiff to be in a leaning position and would have increased the chances of scratching the plate. Through its representatives and engineers, defendant had observed the machine in operation and was cognizant of the manner in which "hickies were chased” by Lincoln’s employees.
 

 Samuel Aidlin, a professional engineer, had inspected the machine subsequent to the mishap. In his opinion, based upon the custom in the printing industry, it would have been good custom and practice to have placed guards near the rollers where plaintiff’s hand entered the machine, the danger of human contact being well known. Moreover, he testified that at least three different types of guards were available, two for over 30 years, that they would not have impeded the practice of "chasing hickies,” and that these guards would have protected an employee from exposure to the risk. Based upon the foregoing, both causes of action, negligence and breach of warranty, were submitted to the jury.
 

 Although defendant was found negligent, recovery on that ground was barred by a finding that plaintiff had been contributorily negligent. However, on the breach of warranty claim, a verdict was returned for the plaintiff which defendant then moved to set aside. In a decision, rendered on May 25, 1973 and in which a motion, pursuant to CPLR 4404 (subd [a]), to set aside the verdict in favor of plaintiff was granted, the Trial Justice stated that in charging the jury a distinction had been drawn "between negligence and breach of warranty with regard to a plaintiff’s contributory negligence,” reliance having been placed upon the Appellate Division decision in
 
 Codling v Paglia
 
 (38 AD2d 154) where the court said, at page
 
 *381
 
 161, that "contributory negligence is not a defense to an action for breach of implied warranty.” It was pointed out that while said motion was being considered the Court of Appeals ruled in
 
 Codling
 
 on May 3, 1973 that contributory negligence would be a defense in cases of strict products liability (32 NY2d 330, 343). Thereafter, defendant moved for reargument and for judgment on the issue of warranty as a matter of law. In an opinion dated September 21, 1973, said Justice decided to set aside the entire verdict and direct a new trial on all questions in the interest of justice, it being regarded as possible that the charge was confusing to the jury since it was delivered before the Court of Appeals’ decision in
 
 Codling.
 
 It was also declared that under the standards of said decision plaintiff’s complaint would have to be dismissed but that, in the context of this case, plaintiff’s actions might not be regarded as constituting contributory negligence as a matter of law since a subordinate workman has little, if any, choice in obeying a superior’s instructions.
 

 Defendant appealed and the Appellate Division, Second Department, in reversing, on the law and relying,
 
 inter alia,
 
 on
 
 Campo v Scofield
 
 (301 NY 468,
 
 supra),
 
 reinstated the jury verdict on the negligence cause of action and directed a judgment for defendant on the cause asserting a breach of warranty. It found that the danger of being caught in the machine was well known in the trade and, more importantly, the plaintiff had actual knowledge of the possible consequences in "chasing a hickie”.
 

 CPLR 4404 (subd [a]) authorizes the court, either by motion of any party, or on its own initiative, to order a new trial "in the interest of justice”. It is predicated on the assumption that the Judge who presides at trial is in the best position to evaluate errors therein (4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.01). The Trial Judge must decide whether substantial justice has been done, whether it is likely that the verdict has been affected
 
 (Matter of De Lano,
 
 34 AD2d 1031, 1032, affd 28 NY2d 587) and "must look to his own common sense, experience and sense of fairness rather than to precedents in arriving at a decision” (4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.11). This power conferred upon a court to order a new trial is discretionary in nature
 
 (Mercado v City of New York,
 
 25 AD2d 75, 77; see
 
 McCarthy v Port of N. Y. Auth.,
 
 21 AD2d 125). Although matters of discretion are reviewable by the Appellate Division
 
 (O’Connor v Papertsian,
 
 
 *382
 
 309 NY 465, 471; see CPLR 5501, subd [c]), the Appellate Division here did not see fit to interfere with the exercise of the trial court’s discretion or otherwise pass upon it.
 

 There were errors. At the outset of the charge, the court stated: "I charge you that the plaintiff knew of the risk and assumed it” and, without explaining the matter further, digressed into another subject. Plaintiff took an exception. Such an instruction was erroneous in that assumption of risk is an affirmative defense (see CPLR 1412; Siegel, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 3018, 1975-1976 Supp, p 8; see, also,
 
 Mclnnis v Fireman’s Fund Ins. Co.,
 
 322 So 2d 155 [La];
 
 Smith v Dhy-Dyamic Co.,
 
 31 Cal App 3d 852) which, as here, is waived if not specifically pleaded (CPLR 3018). The court also stated that, if the contributory negligence of plaintiff was a "factor” to the happening of the event, there could be no recovery—as opposed to a "substantial factor” as required under
 
 Codling v Paglia
 
 (32 NY2d 330, 342,
 
 supra).
 
 It is noted, however, that no exception was taken as to this item. The jury was also charged that contributory negligence would not provide a defense to the warranty cause, a statement thereafter cast in doubt by this court in
 
 Codling.
 
 Under these circumstances, there should be a reversal of the Appellate Division order and a new trial on all issues.
 

 We are confronted here with the question as to the continued validity of the patent-danger doctrine of
 
 Campo v Scofield
 
 (301 NY 468,
 
 supra).
 
 Plaintiff sought damages by alleging two causes of action, one couched in negligence in the design of the machinery and the other premised upon the breach of an implied warranty. Since the time of trial, a third independent cause of action, one in strict products liability, has been recognized by this court
 
 (Velez v Craine & Clark Lbr. Corp.,
 
 33 NY2d 117;
 
 Codling v Paglia, supra).
 
 The claims constitute separate theories of recovery and the decisions both in this State (e.g.,
 
 Velez v Craine & Clark Lbr. Corp., supra; Rainbow v Elia Bldg. Co.,
 
 49 AD2d 250;
 
 Jerry v Borden Co.,
 
 45 AD2d 344) and beyond (e.g.,
 
 Pike v Hough Co.,
 
 2 Cal 3d 465;
 
 Palmer v Massey-Ferguson,
 
 3 Wash App 508; Ann., 52 ALR3d 101) have adhered to the distinction
 
 (Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395).
 

 Directing our attention to the cause of action for negligence in design, defendant asserts, citing
 
 Campo v Scofield (supra),
 
 
 *383
 
 that the action must be dismissed because the danger created by the absence of safeguards on the machine was open and obvious and, therefore, as the manufacturer it was under no duty to protect plaintiff from such a patent defect.
 
 Campo
 
 set forth the following principles (p 471): "The cases establish that the manufacturer of a machine or any other article, dangerous because of the way in which it functions, and patently so, owes to those who use it a duty merely to make it free from latent defects and concealed dangers. Accordingly, if a remote user sues a manufacturer of an article for injuries suffered, he must allege and prove the existence of a latent defect or a danger not known to plaintiff or other users”. It was then declared (p 472): "If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law’s demands. We have not yet reached the state where a manufacturer is under the duty of making a machine accident proof or foolproof. Just as the manufacturer is under no obligation, in order to guard against injury resulting from deterioration, to furnish a machine that will not wear out (see
 
 Auld v. Sears, Roebuck & Co.,
 
 288 N. Y. 515, affg. 261 App. Div. 918), so he is under no duty to guard against injury from a patent peril or from a source manifestly dangerous.”
 

 The requirement that a latent defect be proved, before there could be a recovery against a manufacturer in a negligence action, has retained its vitality
 
 (Sarnoff v Charles Schad, Inc.,
 
 22 NY2d 180;
 
 Inman v Binghamton Housing Auth.,
 
 3 NY2d 137). The underlying rationale of the court’s decision in
 
 Campo
 
 apparently is founded on the notion that it should be the task of the Legislature, not the judiciary, to compel manufacturers to install possible safety devices
 
 (Campo v Scofield, supra,
 
 p 472; see Marschall, An Obvious Wrong Does Not Make a Right: Manufacturers’ Liability For Patently Dangerous Products, 48 NYU L Rev 1065, 1081).
 
 Campo
 
 has been the subject of sustained attack (see Marschall, p 1079; see, also,
 
 Pike v Hough Co.,
 
 2 Cal 3d 465,
 
 supra; Messina v Clark Equip. Co.,
 
 263 F2d 291 [dissent]; 2 Harper & James, Torts, § 28.5). The major thrust of criticism stems from the belief that, in our highly complex and technological society, we fall victim to the manufacturer who holds himself out as an expert in his field. It is argued that the
 
 Campo
 
 doctrine is
 
 *384
 
 "a vestigial carryover from
 
 pre-MacPherson
 

 [1]
 

 days when deceit was needed for recovery” (2 Harper & James, Torts, § 28.5).
 

 More specifically, it is contended that the application of
 
 Campo
 
 amounts to an assumption of risk defense as a matter of law "with the added disadvantage that the defendant was relieved of the burden of proving that plaintiff had subjectively appreciated a known risk” (Rheingold, Expanding Liability of the Product Supplier: A Primer, 2 Hofstra L Rev 521, 541).
 
 Campo
 
 is viewed as inconsistent because, on the one hand, it places a duty on the manufacturer to develop a reasonably safe product yet eliminates this duty, thereby granting him immunity from answering in damages, if the dangerous character of the product can be readily seen, irrespective of whether the injured user or consumer actually perceived the danger. As Professors Harper and James succinctly assert: "The bottom does not logically drop out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition. Thus if the product is a carrot-topping machine with exposed moving parts, or an electric clothes wringer dangerous to the limbs of the operator, and if it would be feasible for the maker of the product to install a guard or safety release, it should be a question for the jury whether reasonable care demanded such a precaution, though its absence is obvious. Surely reasonable men might find here a great danger, even to one who knew the condition; and since it was so readily avoidable they might find the maker negligent”. (2 Harper & James, Torts, § 28.5.)
 

 Other jurisdictions have taken a more liberal position. For example, in
 
 Palmer v Massey-Ferguson
 
 (3 Wash App 508,
 
 supra),
 
 the plaintiff brought an action against the manufacturer of a hay baler for injuries sustained while adjusting a drawbar. In response to the defendant’s allegations that the patent peril precluded liability, the court said (p 517): "The manufacturer of the obviously defective product ought not to escape because the product was obviously a bad one. The law, we think, ought to discourage misdesign rather than encouraging it in its obvious form.” (See, also,
 
 Pike v Hough Co., 2
 
 Cal 3d 465,
 
 supra; Byrnes v Economic Mach. Co.,
 
 41 Mich App 192.) Another case,
 
 Bexiga v Havir Mfg. Co.
 
 (60 NJ 402, 412), forcefully stated: "The asserted negligence of plaintiff—plac
 
 *385
 
 ing his hand under the ram while at the same time depressing the foot pedal—was the very eventuality the safety devices were designed to guard against. It would be anomalous to hold that defendant has a duty to install safety devices but a breach of that duty results in no liability for the very injury the duty was meant to protect against.” We find the reasoning of these cases persuasive.
 
 Campo
 
 suffers from its rigidity in precluding recovery whenever it is demonstrated that the defect was patent. Its unwavering view produces harsh results in view of the difficulties in our mechanized way of life to fully perceive the scope of danger, which may ultimately be found by a court to be apparent in manufactured goods as a matter of law. As this court itself recently observed: "Today as never before the product in the hands of the consumer is often a most sophisticated and even mysterious article. Not only does it usually emerge as a sealed unit with an alluring exterior rather than as a visible assembly of component parts, but its functional validity and usefulness often depend on the application of electronic, chemical or hydraulic principles far beyond the ken of the average consumer. Advances in the technologies of materials, of processes, of operational means have put it almost entirely out of the reach of the consumer to comprehend why or how the article operates, and thus even farther out of his reach to detect when there may be a defect or a danger present in its design or manufacture. In today’s world, it is often only the manufacturer who can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose. Once floated on the market, many articles in a very real practical sense defy detection of defect, except possibly in the hands of an expert after laborious and perhaps even destructive disassembly”.
 
 (Codling v Paglia,
 
 32 NY2d 330, 340,
 
 supra.)
 
 Apace with advanced technology, a relaxation of the
 
 Campo
 
 stringency is advisable. A casting of increased responsibility upon the manufacturer, who stands in a superior position to recognize and cure defects, for improper conduct in the placement of finished products into the channels of commerce furthers the public interest. To this end, we hold that a manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended (2 Harper & James, Torts, § 28.3; see, also,
 
 Pierce v Ford Motor Co.,
 
 190
 
 *386
 
 F2d 910), as well as an unintended yet reasonably foreseeable use (see
 
 Bolm v Triumph Corp.,
 
 33 NY2d 151, 157-158;
 
 Green v Volkswagen of Amer.,
 
 485 F2d 430;
 
 Gardner v Q.H.S., Inc.,
 
 448 F2d 238;
 
 Larsen v General Motors Corp.,
 
 391 F2d 495;
 
 Ethicon, Inc. v Parten,
 
 520 SW2d 527 [Tex];
 
 Johnson v American Motors Corp.,
 
 225 NW2d 57 [ND]).
 

 What constitutes "reasonable care” will, of course, vary with the surrounding circumstances and will involve "a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm” (2 Harper & James, Torts, § 28.4; see
 
 Pike v Hough Co.,
 
 2 Cal 3d 465,
 
 supra).
 
 Under this approach, "the plaintiff endeavors to show the jury such facts as that competitors used the safety device which was missing here, or that a 'cotter pin costing a penny’ could have prevented the accident. The defendant points to such matters as cost, function, and competition as narrowing, the design choices. He stresses 'trade-offs’. If the product would be unworkable when the alleged missing feature was added, or would be so expensive as to be priced out of the market, that would be relevant defensive matter” (Rheingold, Expanding Liability of the Product Supplier: A Primer, 2 Hofstra L Rev, 521, 537; see
 
 Wirth v Clark Equip. Co.,
 
 457 F2d 1262;
 
 Sutkowski v Universal Marion Corp.,
 
 5 Ill App 3d 313). In this case, there was no evidence submitted at trial to show the cost of guards that could have been attached in relation to the entire cost of the machine.
 

 Also relevant, but by no means exclusive, in determining whether a manufacturer exercised reasonable skill and knowledge concerning the design of the product is whether he kept abreast of recent scientific developments
 
 (Schenebeck v Sterling Drug,
 
 423 F2d 919;
 
 La Plant v DuPont de Nemours & Co.,
 
 346 SW2d 231 [Mo]) and the extent to which any tests were conducted to ascertain the dangers of the product (see Ann., 6 ALR3d 91; 2 Harper & James, Torts, § 28.4). This does not compel a manufacturer to clothe himself in the garb of an insurer in his dealings
 
 (Bernstein v Remington Arms Co.,
 
 16 AD2d 694; see, also,
 
 Case Co. v Sandefur,
 
 245 Ind 213;
 
 Stevens v Durbin Durco,
 
 377 SW2d 343 [Mo]; 1 Hursch & Bailey, American Law of Products Liability 2d, § 2:4) nor to supply merchandise which is accident proof (see
 
 Neusus v Sponholtz,
 
 369 F2d 259;
 
 Varas v Barco Mfg. Co.,
 
 205 Cal App 2d 246;
 
 Royal v Black & Decker Mfg. Co.,
 
 205 So 2d 307 [Fla]). It does
 
 *387
 
 require, however, that legal responsibility, if any, for injury caused by machinery which has possible dangers incident to its use should be shouldered by the one in the best position to have eliminated those dangers.
 

 We next examine the duty owing from a plaintiff or, in other words, the conduct on a plaintiffs part which will bar recovery from a manufacturer.
 
 [2]
 
 As now enunciated, the patent-danger doctrine should not, in and of itself, prevent a plaintiff from establishing his case. That does not mean, however, that the obviousness of the danger as a factor in the ultimate injury is thereby eliminated, for it must be remembered that in actions for negligent design, the ordinary rules of negligence apply
 
 (Bolm v Triumph Corp.,
 
 33 NY2d 151,
 
 supra; Larsen v General Motors Corp.,
 
 391 F2d 495,
 
 supra;
 
 Noel, Manufacturer’s Negligence of Design or Directions for Use of a Product, 71 Yale L J 816, 818). Rather, the openness and obviousness of the danger should be available to the defendant on the issue of whether plaintiff exercised that degree of reasonable care as was required under the circumstances.
 

 The second cause of action, for breach of an implied warranty, fails to mention section 2-314 of the Uniform Commercial Code. Since service of the complaint, it has been recognized, in fact patterns similar to that here, that such a claim, based on tortious behavior, is more correctly treated under the theory of strict products liability (see
 
 Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395,
 
 supra; Velez v Craine & Clark Lbr. Corp.,
 
 33 NY2d 117,
 
 supra; Bolm v Triumph Corp., supra; Codling v Paglia,
 
 32 NY2d 330,
 
 supra).
 
 The majority of this court does not favor a reconsideration of
 
 Codling v Paglia (supra)
 
 in which it was stated (p 342):”We accordingly hold that, under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided: (1) that at the time of the occurrence the product is being used (whether by the person injured or damaged or by a third person) for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both
 
 *388
 
 discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.”
 
 [3]
 
 On this issue, Judge Fuchsberg and I would prefer to adopt the rule taken by a number of States, as embodied in section 402A of the Restatement, Torts 2d.
 

 The order of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
 

 Order reversed, etc.
 

 [1]
 

 .
 
 (MacPherson v Buick Motor Co.,
 
 217 NY 382.)
 

 [2]
 

 . Since the enactment of CPLR 1411-1413, no procedural distinctions between contributory negligence and assumption of risk now come to mind.
 

 [3]
 

 . For cases arising on and after September 1, 1975, see CPLR 1411-1413.