## (July 31, 1978)

■ MARIO BONITO, Appellant, v PEEKSKILL FORD MOTORS, INC., et al., Respondents. (And a Third-Party Action.)—In an action to recover damages for personal injuries, plaintiff appeals from a judgment of the Supreme Court, Westchester County, entered June 21, 1977, which is in favor of defendants Peekskill Ford Motors, Inc., Harsco Corp. and Amthor's Welding Service, Inc., upon a jury verdict, and in favor of defendant Ford Motor Co., upon the trial court's dismissal of the complaint as against it at the end of plaintiff's case. Judgment modified, on the law, by deleting therefrom those provisions which are in favor of defendants Peekskill Ford Motors, Inc., Harsco Corp. and Amthor's Welding Service, Inc. As so modified, judgment affirmed and, as between plaintiff and the said defendants, action severed and new trial granted as to the issue of negligence, with costs to abide the event. The court improperly charged the jury on the patent danger rule enunciated in *Campo v Scofield* (301 NY 468). This doctrine was expressly overruled in *Micallef v Miehle Co. Div. of Miehle-Goss Dexter* (39 NY2d 376). Further, the court erroneously refused plaintiff's offer into evidence of a Ford sales bulletin issued to all dealers. Part V (c) of the bulletin provides: "Each dealer is required to perform or make the necessary arrangements for the inspection * * * of a heavy-duty truck before delivery." The bulletin was material and relevant to establishing plaintiff's cause of action in negligence against Peekskill Ford Motors, Inc. Titone, J. P., Margett and Hawkins, JJ., concur; Suozzi, J., concurs insofar as the majority has granted a new trial as between plaintiff and defendants Peekskill Fords Motors, Inc. (Peekskill Ford), Harsco Corp. and Amthor's Welding Service, Inc., on the issue of negligence, but otherwise dissents and votes to also grant a new trial as between plaintiff and defendant Ford Motor Co. (Ford), on the issue of breach of warranty, with the following memorandum: In my view, the trial court erred in granting Ford's motion, made at the end of plaintiff's case, to dimiss all causes of action against it. My review of the record indicates that Ford, by its conduct, should be estopped from denying that its warranties covered the dump body of the truck in question. Accordingly, plaintiff should be afforded a new trial against Ford for breach of warranty. The immediate cause of plaintiff's injuries was the malfunctioning of the tailgate and chain lock section of the prefabricated dump body of a dump truck which was purchased from the defendant dealer, Peekskill Ford. It is undisputed that the dump truck in question consisted of three parts: (1) the cab; (2) the chassis and (3) the dump body. The cab and chassis were concededly manufactured by Ford. The dump body was manufactured by defendant Harsco and installed by defendant Amthor. In dismissing all causes of action against Ford, the trial court initially stressed the fact that Ford did not construct the dump body. With regard to two written warranties issued by Ford, the trial court ruled that as a matter of law, the language thereof did not cover the dump body of the truck. Finally, the trial court held that "all the surrounding circumstances and facts" negated the existence of any issue of fact "for the jury to determine as to whether the defendant Ford is estopped from being treated as the manufacturer of the

dump truck in question." Although the trial court's ruling with regard to the interpretation of the written warranties can be sustained based on their language, the issue of estoppel is an entirely different matter and should not, in my view, have been decided in Ford's favor. The factual background of this case is vital to a proper understanding and resolution of the issues, and it is to those facts that I now turn. The two warranties referred to by the trial court are contained on an order form, which was completed in connection with the purchase, and a printed booklet entitled "Warranty Facts", which was given to plaintiff. Both items were admitted into evidence. The first warranty appears on the back of the order form and states: "The manufacturer warrants each new motor vehicle * * * chassis or parts *manufactured by it* to be free from defects in material or workmanship under normal use and service" (emphasis supplied). The second written warranty, contained in the printed booklet entitled "Warranty Facts", provides: "Ford and the Selling Dealer jointly warrant with respect to each 1973 model medium and heavier truck *built by Ford* that the Selling Dealer will repair or replace any of the following parts that are found to be defective in factory material or workmanship" (emphasis supplied). With regard to these two written warranties, the trial court held that the phrases "truck built by Ford" and "motor vehicle * * * manufactured by it" used therein were unambiguous and only covered the cab and chassis and not the dump body. In view of the fact that Ford did not in fact manufacture or build the dump body, that ruling of the trial court should not be disturbed. However, and this is most significant, Ford's representations were not limited to these two warranties. When plaintiff visited the showroom of Peekskill Ford, a salesman gave him a color brochure put out by Ford which displayed various dump trucks. The salesman especially drew plaintiff's attention to a dump truck pictured on the inside of the brochure's front cover. In the lower right hand corner of that picture, the following words appear: "F-700 series with Dump Body". I recognize that the very same brochure contains the following statement: "Bodies or trailers shown with Ford Chassis-Cabs or Tractors are merely representative of the many types available from various manufacturers and do not constitute a recommendation by Ford Division as to their suitability for your individual needs." Nevertheless, the maxim that one picture equals a thousand words is most compelling and applicable in this case. To charge the ordinary consumer with a duty to read and digest fine print in the midst of such a high-pressured situation is both unrealistic and unfair. Nor was the representation that Ford was the manufacturer of the complete dump truck limited to the brochure supplied by the showroom salesman. In connection with the purchase, Peekskill Ford prepared an order form and an invoice and both were admitted into evidence. In the top portion of the order form the following sentence appears: "Please enter my order for new 1973 Ford". On the next line the "Body Type" is specified as "5 Yrd. Dump". The invoice bears the Ford logotype in the upper left-hand corner, and in the column headed "Make", the word "Ford" appears. In the column headed "Model" the words "(Dump) Chassis Cab" were inserted. The printed booklet entitled "Warranty Facts", which was given to plaintiff, had the words "Ford Customer Service Division" with the Ford logotype printed in large black type under the heading: "WARRANTY FACTS 1973 Model Medium and Heavier Trucks Series 500 and Higher". On the bottom portion of the first section of the "Warranty Facts" booklet is a blank "ownercard" or "warranty identification card". At the bottom of the card is the following direction: "If you change residence during the warranty period, you should

request your Dealer to send Ford an address change report. If the vehicle is sold during the warranty period, the new owner should request his Dealer to send Ford an owner change report." Under these circumstances, Ford should be estopped from denying that the warranties covered the dump truck. The sales manager of Peekskill Ford testified that although he received the vehicle as a cab and chassis without a body, it could not be used for business in that form. Clearly, when plaintiff entered the showroom he was contemplating the purchase of a Ford dump truck and had no idea that the dump truck described and displayed to him was anything but a Ford truck. Plaintiff was never told that the dump body was manufactured by Harsco or installed by Amthor. He was shown several documents all of which conveyed the reasonable impression that Ford was the manufacturer of the truck as one complete unit. Plaintiff's rightful reliance thereon seriously compromised his position as a consumer. At the very least, it deprived him of the opportunity to accept or reject the dump body manufactured and installed by Harsco and Amthor, respectively, and to explore the possibility of attempting to obtain an appropriate warranty from either Harsco or Amthor or both. Moroever, even if plaintiff had been alerted at the time of purchase that the dump body had not been manufactured by Ford, he would have been, from the consumer's view, in an untenable position since his practical chances of obtaining a warranty from Harsco or Amthor at that point were virtually nil. At the moment of purchase of an automobile or truck from a car manufacturer, in this case Ford Motor Co., the consumer had no bargaining power against any other company that has contributed a part to the body of the vehicle or truck that bears the manufacturer's name and is sold under the aegis of an authorized dealer. Under these circumstances, Ford should be obligated under its express warranty for all of the component parts of the product which it displays to the public as its own. Accordingly, a new trial should be granted between plaintiff and Ford Motor Co. for breach of warranty.