■ OTTO F. SCHUMACHER et al., Appellants, v RICHARDS SHEAR COMPANY, INC., Appellant, and LOGEMANN BROTHERS COMPANY, INC., Respondent. — Appeal from an order of the Supreme Court at Special Term (Keane, J.), entered April 8, 1981 in Tioga County, which granted defendant Logemann Brothers Company, Inc.'s motion for summary judgment dismissing plaintiffs' complaint and defendant Richards Shear Company, Inc.'s cross claim. In January, 1964, defendant Richards Shear Company, Inc. (Richards Shear) sold to Wallace Steel and Supply Company, plaintiff's employer, a hydraulic shearing machine designed and manufactured by it for use in cutting scrap metal. On April 17, 1978, plaintiff lost the sight of his right eye when he was struck by a piece of metal thrown from that machine while he was operating it in the course of his employment. In this action, it is his contention that the shearing machine was defective in design and manufacture in that it did not have a protective guard or shield to prevent metal from being thrown by the machine and that defendants should have warned users of the existing dangerous condition, or taken corrective action to remedy it. Logemann Brothers Company, Inc. (Logemann) is included as a defendant by virtue of a "License and Sales Agreement" dated January, 1968 wherein Richards Shear granted to Logemann, among other things, the exclusive right to manufacture and sell certain Richards Shear products, improvements, inventory, and the trade name "Richards". This transaction was, essentially, a sale of all assets for thereafter Richards Shear discontinued its business although it still survives as a corporate entity with minimal assets. The following month, Logemann notified Wallace Steel of its acquisition of Richards Shear and of its availability to replace parts and service equipment. Logemann serviced the Richards Shear machine at Wallace Steel in Ithaca, New York, and left it in normal running order. Other than complying with requests for replacement

parts, the sole contact between Logemann and Wallace Steel prior to the commencement of this action was an advisory letter dated April 16, 1976, wherein Logemann notified the president of Wallace Steel that it had entered into a service contract with a named individual to provide service for Richards Shear machinery. In dismissing plaintiff's complaint against Logemann, Special Term found there was no factual basis upon which it could be cast in liability as a "successor" to Richards Shear. We agree. There is no evidence of a merger or consolidation of the two companies, nor was there any express or implied assumption of liability by Logemann. It is not alleged that there was any fraudulent purpose in the acquisition of Richards Shear products so that it could escape any potential liability, nor can it be established that Logemann is the mere continuation of Richards Shear. Accordingly, none of the criteria needed to establish liability as a "successor" have been met (*Hartford Acc. & Ind. Co. v Canron, Inc.,* 43 NY2d 823). While the plaintiff in *Hartford* based its claim of successor liability on theories of negligence and breach of warranty, we perceive *no reason why a claim in strict products liability should not be* subject to the same rule. Moreover, no duty should be imposed upon Logemann as a purchaser corporation to warn or instruct Wallace Steel on the use of a machine provided by Richards Shear when the injury in question occurred some 14 years after the purchase. The time element alone bears heavily on the lack of foreseeability that such an incident would occur and leads inescapably to the conclusion that, applying the ordinary rules of negligence, there was no lack of reasonable care under the circumstances (*Torrogrossa v Towmotor Co.,* 44 NY2d 709; *Micallef v Miehle Co., Div. of Miehle-Goss Dexter,* 39 NY2d 376, 387). Order affirmed, with costs. Kane, Casey and Mikoll, JJ., concur.

Mahoney, P. J., and Sweeney, J., dissent and vote to reverse in the following memorandum by Sweeney, J. Sweeney, J. (dissenting). While we agree with the majority that defendant Logemann is not a successor corporation of Richards Shear, and thus not liable as such, we are unable to vote to affirm and dismiss the complaint. We, therefore, dissent and vote to reverse in the following memorandum. In addition to liability based purely on Logemann's status as a successor corporation, plaintiffs also contend that defendant Logemann had an independent duty to warn of the potential dangers of the shearing machine. Specifically, plaintiffs contend that since the injury was the result of the failure to provide a protective guard, defendant Logemann should have warned plaintiffs after receiving notice of the danger. On this issue, it appears from the record that after Logemann acquired the product line it contacted Wallace Steel and solicited business with respect to the shear machine, made assurances concerning pricing and advised of the acquisition by it of two former Richards Shear servicemen. Furthermore, it appears that a former Richards Shear serviceman was sent by Logemann to service and check the machine. While we are unaware of any New York case precisely on point, we are of the view that where there is a significant relationship between the purchaser of a defective product and the corporation which purchased all of the assets of the corporation which sold the product, there arises a duty to warn on the part of the purchasing corporation (see *Gee v Tenneco, Inc.,* 615 F2d 857; *Travis v Harris Corp.,* 565 F2d 443). Plaintiffs have raised sufficient factual questions in the present case on the issue of Logemann's duty to warn so as to preclude the granting of summary judgment. Consequently, the order should be reversed, and the motion denied.