**James PRESSLEY, Plaintiff-Appellant,**

v.

**SEARS–ROEBUCK AND COMPANY and Roper Corporation, Defendants-Appellees.**

**No. 83–8256.**

United States Court of Appeals, Eleventh Circuit.

Aug. 13, 1984.

Robert Falanga, Don C. Keenan, Robert C. Edwards, David Sewell Bills, Atlanta, Ga., for plaintiff-appellant.

Ronald L. Reid, R. Wayne Thorpe, Atlanta, Ga., for defendants-appellees.

Before RONEY and VANCE, Circuit Judges, and SIMPSON, Senior Circuit Judge.

RONEY, Circuit Judge:

This diversity action arises out of injuries sustained by the plaintiff James Pressley when his leg was cut by the rotary blade of a lawn mower manufactured by defendant Roper Corporation and sold by defendant Sears, Roebuck and Company. The issue on appeal is whether the district court erred in granting partial summary judgment to defendants under the plaintiff's theories of negligence and strict liability in tort for failure to equip the lawn mower with a deadman control or other like safety feature. We hold that it did not.

Plaintiff's mother-in-law purchased the riding lawn mower on August 9, 1974. On May 13, 1980, the plaintiff was mowing his lawn near a creek bank. As he turned the mower to the right away from the creek, the mower became caught in heavy vegetation. Mr. Pressley placed the mower in "reverse" gear in order to free the machine and alleges that when he did so, the mower lurched forward and "tilted him off into the creek." As Pressley lay in the creek bed, the mower continued to operate, eventually sliding down the embankment and injuring Pressley's leg.

The primary substantive complaint in this lawsuit involves the conceded failure of the defendants to equip the lawn mower with a "deadman device" that would automatically turn the lawn mower motor off once the operator left the driver's seat. The district court held that even assuming that the absence of this device was the proximate cause of Mr. Pressley's injuries, neither Roper Corporation nor Sears can be held liable, under either a strict liability or a negligence theory, based on the absence of this device.

The following analysis by the district court appears sound. Georgia's strict liability statute provides that a manufacturer is liable if his product "when sold ... was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained." O.C.G.A. § 51–1–11(b)(1); Ga. Code Ann. § 105–106(b)(1). The Georgia Supreme Court has declined to hold a manufacturer to be an insurer or a guarantor of its products, or liable merely because a product may be dangerous, but has interpreted this statute to impose strict liability only upon a showing that the product in question is defective in its manufacture, packaging, or failure to warn of its dangerous propensities *Center Chemical Co. v. Parzini*, 234 Ga. 868, 218 S.E.2d 580 (1975).

■ Thus, " '[i]f a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands.' " *Poppell v. Waters*, 126 Ga.App. 385, 190 S.E.2d 815, 817 (citing *Stovall Co. v. Tate*, 124 Ga.App. 605, 184 S.E.2d 834, 838 (1971). A manufacturer is under no duty to guard against injury from a patent peril or from a source that is manifestly dangerous. There is no duty to warn of obvious common dangers connected with the use of a product. *Colson v. Allied Products Corp.*, 640 F.2d 5 (5th Cir.1981) (Georgia law); *Hunt v. Harley-Davidson Motor Company Inc.*, 147 Ga. App. 44, 248 S.E.2d 15 (1978). *See also, Stokes v. Peyton's, Inc.*, 526 F.2d 372 (5th Cir.1976); *Stovall & Co. v. Tate*, 124 Ga. App. 605, 184 S.E.2d 834 (1971). There was no evidence presented to the court suggesting that the absence of a deadman device

rendered the lawn mower unsuitable for mowing grass, its "intended use."

There is no statutory requirement or industry safety standard that would impose upon either Roper or Sears an obligation to manufacture and to sell only those lawn mowers equipped with deadman devices. Although the lawn mower in this case is arguably potentially dangerous, the lack of such a device was open and obvious. Pressley acknowledged that he knew, prior to his accident, that the lawn mower motor and blade would continue to run even when the rider was unseated.

Q. It is your testimony if the engine is on, the blade is moving?

A. Correct.

Q. You mean you knew before May of 1980 that the mower would continue to run?

A. Sure.

Q. You knew that it continued to run at the same speed, did you not?

A. Correct.

Q. And the blade continued to run?

A. That's correct.

In and of itself, the absence of a deadman control does not render the lawn mower in question "defective," and therefore, as a matter of law, Roper cannot be held strictly liable as a manufacturer of a defective product. The existence of an open and obvious danger constitutes an absolute legal defense to the claims of negligent manufacture and design. *See, e.g., Wansor v. George Hantscho Co., Inc.,* 595 F.2d 218 (5th Cir.1979) (Georgia law).

Pressley contends that this Court should anticipate the rejection by the Georgia courts of the open and obvious danger doctrine. The Georgia doctrine of "open and obvious danger" was first announced in *Stovall & Company v. Tate,* 124 Ga. App. 605, 184 S.E.2d 834 (1971). Plaintiff argues reliance was placed on two no longer valid cases: *Campo v. Scofield,* 301 N.Y. 468, 95 N.E.2d 802 (1950), which was overruled in *Micallef v. Miehle Co.,* 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d

571 (1976), and *Murphy v. Cory Pump & Supply Co.,* 47 Ill.App.2d 382, 197 N.E.2d 849 (1964), which was disapproved in *Wright v. Massey-Harris, Inc.,* 68 Ill. App.2d 70, 215 N.E.2d 465 (1966). *See generally Proposed Solutions to an 'Obvious' Problem in Georgia Products Liability Law,* 35 Mercer L.Rev. 915–935 (1984).

Georgia has, however, recently reaffirmed the "open and obvious danger" rule in *Greenway v. Peabody International Corp.,* 163 Ga.App. 698, 294 S.E.2d 541 (1982). Prior to *Greenway* we had specifically rejected the argument that we should anticipate a change in Georgia law. "Appellant argues that because the New York courts have overruled *Campo,* ... we should find *Campo's* rationale no longer stands as the law of Georgia. His reasoning, however, is faulty. Although Georgia courts have adopted *Campo's* holding they are not controlled by the New York judiciary's subsequent decisions. We, on the other hand, in reviewing this diversity case, are absolutely bound by the decisions of the Georgia courts, one of which recently affirmed the *Campo* approach. *Hunt v. Harley-Davidson Motor Co.,* 147 Ga.App. 44, 248 S.E.2d 15 (1978)." *Wansor v. George Hantscho Co., Inc.,* 595 F.2d 218, 220 n. 7 (5th Cir.1979).

We note that plaintiffs do not appeal the jury verdict for defendants that was returned on the claim of strict liability for dynamic instability and negligence based on the failure to use ordinary care in the design and manufacture of a lawn mower that is dynamically unstable.

AFFIRMED.

VANCE, Circuit Judge, concurs in the result.