■ CHERYL KUNCIO et al., Respondents, v MILLARD FILLMORE HOSPITAL, Appellant.—Order unanimously reversed on the law and facts, without costs, motion denied and verdict of the jury reinstated. Memorandum: Plaintiffs are twin sisters who were born prematurely on March 9, 1953 in defendant hospital. They were delivered by the family physician, and were placed in incubators in the hospital's premature nursery. Both infants received supplemental oxygen for a period of 23 days commencing with their birth. During that span, one twin showed signs of respiratory difficulty and was placed in an air lock for a period of four days. The concentration of oxygen administered to plaintiffs was admittedly high but was otherwise unestimable except for testimony that there was a 90% concentration of oxygen in the air lock. Both girls developed retrolental fibroplasia (RLF) caused by their exposure to the high concentrations of oxygen. RLF is a progressive disease affecting the retina of the eye. In its final stage, the retina detaches and a fibroid mass develops over the lens of the eye causing blindness. As a result of RLF, one twin is totally blind and the other has extremely limited vision in only one eye.

Plaintiffs commenced this action against the hospital, alleging medical malpractice and the failure to obtain informed consent from their parents before the high concentration of supplemental oxygen was administered. Since experts for both parties agreed that it was the liberal exposure to oxygen that caused the twins' blindness, much of the trial centered on the state of the art of medicine in March 1953. There was no serious dispute that since 1954 medical science has uniformly recognized exposure to increased oxygen levels as the leading cause of RLF. Whether the administration of supplemental

oxygen was a deviation from accepted standards of practice in March 1953 was, however, sharply disputed, and evidence of divided authority on the subject at that time was duly received. Other claimed deviations, i.e., the absence of a pediatrician, the lack of eye examinations and the lack of other physical examinations by a physician, were disputed as measured against the 1953 standards of practice.

Also seriously contested at trial was the issue of whether the oxygen was administered pursuant to doctors' orders. Plaintiffs contended that no such orders ever existed and that it was the nursing staff of the premature nursery who routinely administered "prophylactic doses" of supplemental oxygen. Defendant offered proof through the testimony of its staff that doctors' orders in March 1953 were kept in a separate book, which had long since been destroyed, and that no nurse would engage in a course of treatment using high oxygen without a doctor's order to do so.

Finally, on the issue of the lack of informed consent, it was not denied that such consent was not obtained. Instead, defendant argued, alternatively, that informed consent was unnecessary at that time given the state of the art, or that the subject was the responsibility of the family physician.

The jury returned a verdict of no cause of action in favor of defendant. The trial court granted plaintiffs' motion to set the verdict aside and ordered a new trial on all issues; defendant appeals.

It is settled law that a motion pursuant to CPLR 4404 (a) should not be granted unless the preponderance of the evidence in favor of the plaintiff is so great that the verdict could not have been reached upon any fair interpretation of the evidence *(Rochester Tel. Corp. v Green Is. Constr. Corp.,* 71 AD2d 798, *affd* 51 NY2d 788; *Boyle v Gretch,* 57 AD2d 1047). The motion is addressed to the discretion of the trial court *(Micallef v Miehle Co.,* 39 NY2d 376), but, "a court should be guided by the rule that if the verdict is one which reasonable men could have rendered after receiving conflicting evidence, the court should not substitute its judgment in place of the verdict *(Boyle v Gretch,* 57 AD2d 1047)" *(Harris v Armstrong,* 97 AD2d 947, *affd* 64 NY2d 700). Where, however, the trial court's determination that a jury verdict is contrary to the weight of the evidence is not unreasonable, we will not intervene to reverse that finding *(McDowell v Di Pronio,* 52 AD2d 749).

There is sufficient credible evidence in the record to demon-

strate that while it was recognized in March 1953 that there was a risk of RLF in oxygen therapy and certain studies had shown that supplemental oxygen was either unnecessary or that its use was not worth that risk, there were at the same time many experts who were convinced that oxygen was necessary to prevent brain damage or death in premature infants or that its use was at least a worthwhile risk. There was also sufficient credible evidence in the record to support a finding that the oxygen had been administered pursuant to doctor's orders. Additionally, the jury could reasonably have found that the consent of the parents to the use of oxygen therapy was not obtained because of the state of flux attending the RLF-oxygen relationship, as balanced with the perceived risks of brain damage or death. Finally, the jury could reasonably have found that an informed, reasonably prudent person would nevertheless have consented to the treatment *(Dries v Gregor,* 72 AD2d 231) or that the responsibility to procure the informed consent of plaintiffs' parents was not defendant's. Consequently, it was unreasonable for the trial court to set aside the jury verdict on the ground that it was against the weight of the evidence *(see, Toth v Community Hosp.,* 22 NY2d 255; *Burton v Brooklyn Doctors Hosp.,* 88 AD2d 217).

We also find that the trial court acted unreasonably in concluding that the jury verdict was influenced by extrinsic factors relating principally to jurors' dissatisfaction with the length of the trial. The record contains only two references to juror discontent in that regard and, without more, there is insufficient basis to justify setting aside the verdict *(cf. Mark v Colgate Univ.,* 53 AD2d 884). (Appeal from order of Supreme Court, Erie County, Kuszynski, J.—medical malpractice.) Present—Dillon, P. J., Callahan, Doerr, Boomer and Pine, JJ.