### Helen SMITH, Plaintiff,

v.

### GARDEN WAY, INCORPORATED, Defendant.

Civ. A. No. 1:90–CV–2642–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 26, 1993.

G. Gerald Joseph Kunes, Jr., G. Gerald Joseph Kunes, Sr., Kunes & Kunes, Tifton, GA, for plaintiff.

Robert Malcolm Darrock Chambers, Mabry, McClelland & Brooks, Atlanta, GA, for defendant.

### ORDER

FORRESTER, District Judge.

This wrongful death product liability action is a result of injuries sustained by Plaintiff Helen Smith's husband, William Lawton Smith, Sr., while using a Garden Way rototiller. This matter is before the court on Plaintiff Helen Smith's first motion to amend her complaint [47–1]; Defendant Garden Way,

---

Incorporated's motion for summary judgment [53–1]; Plaintiff's motion to extend time to file discovery depositions [56–1]; Plaintiff's motion to extend time for filing motion for partial summary judgment with proposed motion for partial summary judgment [59–1]; Plaintiff's second motion to amend her complaint [61–1]; and Defendant's motion for leave to file a reply to Plaintiff's response to Defendant's brief in opposition to Plaintiff's motion to amend her complaint [66–1].

The basis for Plaintiff's strict liability and negligence claims in this product liability action is Defendant's failure to install on the rototiller in question an "operator presence control," better known as a "deadman switch" on the tiller's forward gears. In addition, Plaintiff alleges that Defendant is liable for Mr. Smith's accident because of Defendant's failure to warn adequately of the potential dangers of operating its rototiller without such a "deadman control" device. Plaintiff does not contend that there were any other manufacturing defects in the Garden Way tiller. Plaintiff has not asserted a claim that the tiller was defective in its operation. Because the court finds the defect at issue was open and obvious, Plaintiff is barred from recovering under Georgia law for the incident in question under either a strict liability, negligence, or failure to warn theory. Summary judgment is appropriately granted to Defendant.

I. BACKGROUND

The decedent, William Lawton Smith, Sr., purchased a rototiller from Garden Way, Incorporated, in March of 1986. The rototiller was manufactured by Garden Way in 1985. The tiller purchased by Mr. Smith was a "Model Troy–Bilt" tiller.

The Model Troy–Bilt tiller has an eight horsepower engine. The tiller has powered wheels ahead of separately geared tines located in the rear. When the tines are attached to the tiller, the tiller has the capacity to till, cultivate and compost. The tiller is also designed to have the rear tine section disconnected, in which case the tiller can be used to pull a cart or attach various cultivating implements in place of the rear tine section.

The Garden Way Model Troy–Bilt tiller in question had a forward/neutral/reverse lever which delivered engine power to the transmission. The tiller also had a "tine/PTO clutch lever" which allowed the operator to engage or disengage the tines. By placing the tine/PTO clutch lever in the "disengaged" position, the operator of the tiller could stop the tines from turning while permitting the tiller wheels to continue to have power and rotate. The tiller did not have an "operator presence control," otherwise known as a "deadman control" or "deadman switch" on the tiller's forward gear. The tiller had a deadman control on the reverse gear. The absence of a deadman control on the tiller's forward gear would be clearly apparent to the operator of the tiller, particularly given the presence of such a control on the reverse gear.

Detailed instructions concerning the operation of the tiller and, in particular, the forward/neutral/reverse lever of the tiller can be found in the owner's manual which accompanies the tiller and on the labels attached to the tiller itself. The owner's manual and the labels on the tiller specifically instruct the operator to disengage the tines before transporting, loading or unloading, reversing or turning the tiller around.

The American National Standards Institute safety specifications for outdoor power equipment walk-behind powered rotary tillers, ANSI/OPEI B71.8–1986, do not require that manufacturers put a deadman control on forward gears of walk-behind powered rotary tillers. The American National Standards Institute safety specifications do recommend that manufacturers have an operator presence control or deadman control on the reverse gears of walk-behind powered rotary tillers.

On March 4, 1990, Mr. Smith was injured while operating his Model Troy–Bilt rototiller purchased from Garden Way. The exact cause of the accident is unknown, although according to Mrs. Smith, Mr. Smith told her that the tiller "came out of the ground and cut his leg, hung onto him, jumped again, took him in the air with it and then landed on

him." Mr. Smith was taken to the hospital with a tine imbedded in his leg. Mr. Smith died on March 23, 1990, as a result of a pulmonary embolism resulting from the injuries he received while operating the rototiller. Mr. Smith had owned and operated the tiller in question for four years prior to the aforementioned accident.

No evidence was presented indicating that the tiller was not functioning properly at the time the accident occurred. Furthermore, no evidence was presented of any defect in the tiller other than the failure of Garden Way to manufacture the tiller with a deadman control on the forward gear.[1]

## II. DISCUSSION

The court will first address Plaintiff's pending motions to amend her removal complaint. The court will next address the various motions relating to the pending motion for summary judgment. Finally, the court will address Defendant's motion for summary judgment.

### A. *Motion to Amend*[2]

Plaintiff Helen Smith's first motion to amend her removal complaint, filed on March 30, 1992, seeks to assert two new grounds in support of her negligence claim against Defendant Garden Way. First, Plaintiff's amended complaint alleges negligence on the part of Defendant for its failure to recall the rototiller after January of 1988, the point where Garden Way began installing a dead-

man control on the forward gear of its rototillers. Second, Plaintiff alleges negligence based on Defendant's failure to warn in writing after January of 1988 of the inherent dangers in pre–1988 rototillers which do not have a deadman control on the forward gear. Defendant has not objected to this amendment of Plaintiff's complaint. Therefore, for good cause shown Plaintiff's first motion to amend her complaint [47–1] is GRANTED.

Plaintiff filed a second motion to amend her removal complaint on July 10, 1992. This amended complaint seeks to add a claim for punitive damages based on Defendant's willful and wanton failure to manufacture originally its rototillers with a deadman control on the forward gear or to retro-fit these tillers with such a control. As a preliminary matter Defendant has filed a motion for leave to file a reply to Plaintiff's response to Defendant's brief in opposition to Plaintiff's motion to amend due to new evidence presented and alleged inaccuracies and discussion of various deposition testimony relied on by Plaintiff. Thus, for good cause shown and because Plaintiff does not object, Defendant's motion for leave to file a reply [66–1] is GRANTED. Obviously, Defendant contests Plaintiff's motion to amend her complaint in order to assert a punitive damages claim.

This action commenced on October 29, 1990. Discovery ended on April 30, 1992, seventeen months later. Plaintiff filed her motion to amend her removal complaint in

---

1. A subsequent examination of the tiller revealed that the throttle cable and/or throttle assembly was loose on Mr. Smith's tiller. No evidence was presented, however, that the throttle assembly on the tiller was defective when it was bought by Mr. Smith. Nor was any evidence presented indicating that the throttle cable or throttle assembly caused the accident in question.

2. Once the time period for amending a pleading as of right has expired, Fed.R.Civ.P. 15(a) provides, "A party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

The decision whether to grant leave to amend a pleading lies within the sound discretion of the trial court. *Gramegna v. Johnson*, 846 F.2d 675, 678 (11th Cir.1988); *Stephens v. Gay*, 864 F.2d 113, 116 (11th Cir.1989). Because Rule 15(a) envisions liberal allowance of amendments to

pleadings, there must be some substantial reason justifying denial of the motion. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Nolin v. Douglas County*, 903 F.2d 1546 (11th Cir.1990); *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir.1989). A court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment." *Nolin*, at 1550 (quoting *Foman*, 371 U.S. at 182, 83 S.Ct. at 230). *See Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1042 (11th Cir. 1986) (motion to amend denied where proposed amended complaint failed to state a claim); *Halliburton & Associates, Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir.1985).

order to assert a claim for punitive damages on July 10, 1992, well after discovery had closed and Defendant had filed a motion for summary judgment. Contrary to Plaintiff's assertions, the court finds no excusable neglect for Plaintiff's failure to assert a punitive damages claim in a timely manner. Therefore, Plaintiff's motion to amend her complaint [61–1] is DENIED.

### B. Ancillary Motions

Plaintiff has filed a motion to extend the time to file discovery depositions with the court to be used in opposing Defendant's motion for summary judgment. These depositions were taken outside the discovery period by mutual consent between the parties. Defendant does not oppose Plaintiff's motion for an extension of time to file these depositions. Therefore, although the court does not condone informal discovery extensions because of their potential to affect materially and often delay the resolution of the case on the merits, Plaintiff's motion to extend time to file discovery depositions [56–1] is GRANTED.

Plaintiff also seeks an extension of time for filing a motion for partial summary judgment. The basis for Plaintiff's extension is the necessity of incorporating the evidence contained in the aforementioned depositions into the motion for summary judgment. Thus, with the same reservations, Plaintiff's motion to extend time for filing a motion for partial summary judgment [59–1] is GRANTED.

### C. Motions for Summary Judgment

Based on the aforementioned rulings, currently pending before the court are Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment.[3]

#### 1. Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks partial summary judgment as to Defendant's liability for the acts at issue. In addition to deficiencies in the legal basis for seeking summary judgment, namely the reliance on inapplicable New York law, Plaintiff has failed to file a statement of undisputed material facts in support of her motion for partial summary judgment. Therefore, because Plaintiff has failed to submit a proper motion for summary judgment including a statement of undisputed material facts as required by Local Rule 220–5(b)(1), said motion [59–2] is DENIED.

#### 2. Defendant's Motion for Summary Judgment

■ Defendant seeks summary judgment as to Plaintiff's claim based on the open and obvious nature of the alleged defects in Defendant's product, thereby precluding liability under either the strict liability, negligence, or failure to warn theories asserted by Plaintiff. As a preliminary matter the court notes that Plaintiff has failed to file a response to Defendant's statement of undisputed material facts. Therefore, pursuant to Local Rule 220–1(b)(1), the court shall consider the statement of facts to be admitted. Turning to the merits of Defendant's motion for summary judgment, the court finds the alleged defect of failing to install a deadman control on the rototiller's forward gear was open and obvious, such that liability under any of Plaintiff's theories of relief is precluded.

Under Georgia law a manufacturer will not be held to be an insurer or a guarantor of its

---

3. Fed.R.Civ.P. 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Brown v. City of Clewiston,* 848 F.2d 1534, 1536 (11th Cir.1988). Once the movant carries his burden of asserting the basis for his motion, *see Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553, the non-moving party is then required "to go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. To survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to his case so as to create a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552 ("there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessary renders all other facts immaterial"); *Brown,* 848 F.2d at 1537.

products, but rather Georgia law will "impose strict liability only upon a showing of the product in question is defective in its manufacture, packaging, or failure to warn of its dangerous propensities." *Pressley v. Sears–Roebuck & Co.*, 738 F.2d 1222, 1223 (11th Cir.1984) (citing *Center Chemical Co. v. Parzini*, 234 Ga. 868, 869–70, 218 S.E.2d 580, 582 (1975); *cited in Mann v. Coast Catamaran Corp.*, 254 Ga. 201, 202, 326 S.E.2d 436, 437 (1985)); O.C.G.A. § 51–1–11(B)(1) (Georgia's strict liability statute). " ' "If a manufacturer does everything necessary to make the machine function properly for the purpose for which it is designed, if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the law's demands." ' " *Id.* (quoting *Poppell v. Waters*, 126 Ga.App. 385, 387, 190 S.E.2d 815, 817 (1972); *Stovall v. Tate*, 124 Ga.App. 605, 610, 184 S.E.2d 834, 838 (1971)). A "manufacturer is under no obligation to make a machine 'accident proof or fool proof,' [Cits.], or even 'more safe' [Cit.]." *Weatherby v. Honda Motor Co., Ltd.*, 195 Ga.App. 169, 170, 393 S.E.2d 64, 65 (1990), *cert. denied* (June 21, 1990). In this regard the Georgia courts have distinguished between cases where a product is alleged to be defective in the operational sense and those where the product is alleged to be defective because the product does not contain an additional safety feature. *See, e.g., Cragg v. Diebold, Inc.*, 198 Ga.App. 823, 824, 403 S.E.2d 229, 230 (1991); *Weatherby*, 195 Ga.App. 169, 172–73, 393 S.E.2d at 67.

Georgia recognizes the "open and obvious danger" defense to preclude liability from apparent dangers or patent perils. *Wilson v. Bicycle South, Inc.*, 915 F.2d 1503, 1507 (11th Cir.1990) (citing *Stodghill v. Fiat–Allis Construction Machinery, Inc.*, 163 Ga.App. 811, 813, 295 S.E.2d 183, 185 (1982)) ("[t]he open and obvious rule states that a product is not defective if the peril from which injury could result is patent or obvious to the user"); *Weatherby*, 195 Ga.App. at 170, 393 S.E.2d at 65 (the "open and obvious rule" holds "that a product is not defective if the absence of a safety device is open and obvious, and there is no duty to warn of an obvious danger"). Simply stated, the manufacturer has no duty to guard against or warn of open or obvious dangers connected with the use of a product or against the absence of the lack of safety features which are patently not present. *Cragg v. Diebold, Inc.*, 198 Ga.App. 823, 824, 403 S.E.2d 229, 230 (1991); *Weatherby*, 195 Ga.App. 169, 172–73, 393 S.E.2d at 67. The open and obvious rule is still the law in Georgia. *Weatherby*, 195 Ga.App. at 170, 393 S.E.2d at 65; *Pressley*, 738 F.2d at 1224.

Contrary to Plaintiff's assertions, when determining "under the 'open and obvious rule' whether the peril from which an injury results is latent or patent, the decision is made on the basis of an objective view of the product, and the subjective perception of the user or injured party are irrelevant." *Weatherby*, 195 Ga.App. at 171, 393 S.E.2d at 66; *Wilson*, 915 F.2d at 1507 (determination whether peril is patent or obvious to the user "is made on the basis of an *objective* view of the product") (emphasis in original). Furthermore, the existence of an open and obvious danger constitutes an absolute legal defense to strict liability, negligent manufacture or design, or failure to warn claims. *See, e.g., Pressley*, 738 F.2d at 1224; *Weatherby*, 195 Ga.App. at 173, 393 S.E.2d at 68; *Barnes v. Harley–Davidson Motor Co.*, 182 Ga.App. 778, 781, 357 S.E.2d 127, 131 (1987), *cert. denied* (May 27, 1987); *Coast Catamaran Corp. v. Mann*, 171 Ga.App. 844, 846(2), 321 S.E.2d 353, 357 (1984), *aff'd*, 254 Ga. 201, 326 S.E.2d 436 (1985); *Hunt v. Harley–Davidson Motor Co., Inc.*, 147 Ga.App. 44, 45–47, 248 S.E.2d 15, 16–17 (1978). Thus, the open and obvious nature of the alleged defect in Defendant's tiller precludes liability as to all of Plaintiff's theories of recovery.

Consistent with the aforementioned case law, the court finds that the outcome of this case is controlled adversely to Plaintiff by the Eleventh Circuit Court of Appeals' holding in *Pressley*. In *Pressley* the operator of a riding lawn mower was injured when his leg was cut by the rotary blade of the lawn mower. The operator brought suit against the manufacturer alleging that the mower was defective because it did not have a "deadman control" device which allegedly would have prevented the injury. The Eleventh Circuit Court of Appeals held that liability could not attach because the danger was "open and obvious." *Pressley*, 738 F.2d at

1224, cited in *Nettles v. Electrolux Motor A.B.*, 784 F.2d 1574, 1578 (11th Cir.1986). The court found that "no evidence [was] presented to the court suggesting that the absence of a deadman device rendered the lawn mower unsuitable for mowing grass, its 'intended use.'" *Pressley*, 738 F.2d at 1223–24; *see also Stovall & Co., Inc. v. Tate*, 124 Ga.App. 605, 613–14, 184 S.E.2d 834, 840 (1971) (holding manufacturer of lawn mower was not liable for alleged defect that the mower contained no deflection device or grass catcher on the grass discharge chute because the defect was open and obvious). The question presented in *Pressley* is the identical question pending before the court in the case *sub judice*, only the product is changed. Thus, Garden Way's failure to place a deadman control device on its rototiller was an open and obvious defect and danger which prevents Plaintiff's recovery for the injury to the decedent.

Plaintiff's attempt to create a latent defect in the Garden Way tiller through her contention that the fact that the tiller would become uncontrollable was unknown is unavailing. By its very nature one never knows, nor can predict, the moment an accident will occur. That is why the law requires proof of some defect or negligence on the part of a defendant in order to impose liability as a result of the "accident." This, it seems to the court, is but another way of complaining about the absence of a "deadman's switch." It would be obvious to anyone who had operated the device for any period, let alone four years, that it did not have a mind of its own and that the only agency of control of its movement and its spinning tines was human. Suffice it to say that Plaintiff has not alleged, nor provided evidence of, any other "defect" in the Garden Way tiller, other than her deadman control device claim disposed of previously.

Furthermore, Plaintiff's reliance on New York law to avoid Defendant's "open and obvious" defense is misplaced. *See Micallef v. Miehle Co.*, 39 N.Y.2d 376, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976). Notwithstanding the clear fact that Georgia law applies to this tort action under Georgia's adherence to the *lex loci delicti* conflict of law rules,[4] the Eleventh Circuit in *Pressley* specifically rejected the New York State Court's holding in *Micallef*, finding that Georgia still adheres to the open and obvious rule. *See, e.g., Pressley*, 738 F.2d at 1224 (citations omitted).

## III. CONCLUSION

Finding that the alleged defect of failing to install a deadman control on the rototiller's forward gear was open and obvious, liability is barred under each of Plaintiff's theories of recovery; strict liability, negligence and inadequate warning. Summary judgment on behalf of the Defendant is properly entered and this action is, therefore, DISMISSED.

Plaintiff Helen Smith's first motion to amend her removal complaint [47–1] is GRANTED; Defendant Garden Way, Incorporated's motion for summary judgment [53–1] is GRANTED; Plaintiff's motion to extend time to file discovery depositions [56–1] is GRANTED; Plaintiff's motion to extend time for filing motion for partial summary judgment with proposed motion for partial summary judgment [59–1] is GRANTED; Plaintiff's motion for partial summary judgment [59–2] is DENIED; Plaintiff's second motion to amend her removal complaint [61–1] is DENIED; and Defendant's motion for leave to file a reply to Plaintiff's response to Defendant's brief in opposition to Plaintiff's motion to amend its removal complaint [66–1] is GRANTED.

SO ORDERED.

---

4. When considering a choice of law question, a federal court hearing a diversity case is bound by the forum state's conflict of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Broyles v. Bayless*, 878 F.2d 1400, 1402 (11th Cir.1989); *General Tel. Co. of the Southeast v. Trimm*, 706 F.2d 1117, 1119 (11th Cir.1983). Georgia adheres to the traditional choice of law system. *Wallace v. Harrison*, 166 Ga.App. 461, 462–63, 304 S.E.2d 487, 489 (1983). Thus, in contract cases involving conflict of law issues, the rule of *lex loci contractus* controls in Georgia, and for claims sounding in tort, Georgia applies the rule of *lex loci delicti*. *General Tel. Co. of the Southeast v. Trimm*, 252 Ga. 95, 95–96, 311 S.E.2d 460, 461 (1984); *Karimi v. Crowley*, 172 Ga.App. 761, 762, 324 S.E.2d 583, 584 (1984).