784 F.2d 1574
 20 Fed. R. Evid. Serv. 741, Prod.Liab.Rep.(CCH)P 10,971
Matthew NETTLES, Jr., Plaintiff-Appellee,
v.
ELECTROLUX MOTOR AB, Tecfor, Inc., and Huskie Power Outdoor
Equipment Co., Inc., Defendants-Appellants.
 No. 85-7321.
 United States Court of Appeals,
Eleventh Circuit.
 March 26, 1986.
 
 Dennis R. Bailey, Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, Ala., for defendants-appellants.
 C. Knox McLaney, III and J. Doyle Fuller, Montgomery, Ala., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this products liability diversity action, appellee, Matthew Nettles, Jr., recovered a $90,000 jury verdict for injuries sustained while operating a chain saw manufactured by the appellant, Electrolux Motor A.B. (Electrolux). We affirm the judgment based on the Alabama Extended Manufacturer's Liability Doctrine.
 
 I. FACTS
 
 2
 Matthew Nettles, Jr., an illiterate pulpwood cutter with fifteen to twenty years experience, was injured while operating a chain saw manufactured by Electrolux Motor A.B., a Swedish corporation. Nettles alleged that his injury occurred because the saw "kicked back" as he attempted to cut the limb of a pine tree.[1]
 
 
 3
 The chain saw, a Husqvarna model 77, was manufactured in Huskvarna, Sweden, on September 10, 1981, and shipped to the United States via Tecfor, Inc., an Illinois corporation. Huskie Power Outdoor Equipment Company, Inc., a regional distributor based in North Carolina, shipped the saw to an Alabama retailer, Brewton Small Motors, Inc. Cecil L. Huff purchased the saw for use in his logging operation. Nettles worked for Huff when the accident occurred.
 
 
 4
 Nettles filed a complaint in federal district court against Electrolux, Tecfor, and Huskie Power alleging violation of the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) and breach of warranty.
 
 
 5
 The trial began on March 11, 1985. Nettles contended that the Husqvarna chain saw was defective because it was not equipped with a chain brake, which, he claimed, would have prevented his injuries.[2] Electrolux argued that the evidence was insufficient to show that the Husqvarna chain saw was defective and asserted defenses of assumption of risk and contributory negligence. Motions for directed verdict were made at the close of Nettles's evidence and at the close of all the evidence. The court granted Tecfor and Huskie Power's motions for directed verdict, but denied Electrolux's motion. The jury returned a $90,000 verdict for Nettles.[3]
 
 
 6
 Electrolux appeals contending that the district court erred: (1) in denying its motion for directed verdict and for judgment notwithstanding the verdict; (2) in charging the jury; and (3) in admitting irrelevant and hearsay evidence.
 
 II. SUFFICIENCY OF THE EVIDENCE
 
 7
 The standard for reviewing the sufficiency of evidence pursuant to a motion for a directed verdict or for a judgment notwithstanding the verdict is well established. All of the evidence must be considered, but in a light most favorable to the party opposing the motion. The motion should be granted if the evidence points so strongly in the movant's favor that reasonable minds could not arrive at a contrary verdict. On the other hand, the motion should be denied if the record contains evidence that would lead impartial and reasonable minds to different conclusions. Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969); Warren v. Ford Motor Credit Co., 693 F.2d 1373 (11th Cir.1982).
 
 
 8
 The first question presented, then, is whether reasonable and impartial minds could differ on whether Nettles's saw was defective because it did not have a chain brake. To answer this question, we must examine Alabama products liability law.
 
 
 9
 A. "Defectiveness" Under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD)
 
 
 10
 The Alabama Supreme Court developed and named the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) in two cases decided simultaneously, Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976) and Atkins v. American Motors Corporation, 335 So.2d 134 (Ala.1976). To establish liability under the AEMLD, a plaintiff must show that:
 
 
 11
 (1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) Showing these elements, the plaintiff has proven a prima facie case, although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from, or entered into any contractual relationship with, the seller.
 
 
 12
 Casrell at 132-33.
 
 The court defined the key term:
 
 13
 'Defective' is interpreted to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. Comment G. of the Restatements says defective condition applies when, at the time the product leaves the seller's hand, it is in a condition not contemplated by the ultimate consumer.
 
 
 14
 Casrell at 133.
 
 
 15
 Electrolux argues strenuously that, given Alabama products liability law and the evidence presented at trial, reasonable and impartial jurors could come to but one conclusion: that the Husqvarna chain saw was not defective. Electrolux established the following at trial: (1) The chain saw Nettles used was manufactured and designed for professional logging purposes; (2) the majority of professional loggers used chain saws without chain brakes; (3) at the time of Nettles's accident (1981), chain brake technology had not advanced to the point that American chain saw manufacturers felt chain brakes should be standard equipment on chain saws; (4) Electrolux offered chain brakes as optional equipment at the time of Nettles's mishap; and (5) Nettles's saw was equipped with a safety feature known as a "low kick back" chain.[4]
 
 
 16
 Nettles relied, principally, on the testimony of Olof Goransson, an Electrolux quality manager.[5]
 
 
 17
 Nettles contends that Goransson's testimony constituted an admission by Electrolux that their chain saws were not "as safe as possible" and that under Alabama law, such products are considered "defective."
 
 
 18
 According to Alabama precedent, a product is "defective" if it does not meet the reasonable expectations of ordinary consumers as to its safety. Therefore, manufacturers are not automatically subjected to liability because their products are not as safe as possible. Liability may attach, however, if a product, because it does not have some safety feature, fails to meet the reasonable expectations of ordinary consumers as to its safety.
 
 
 19
 Whether a product meets reasonable expectations as to safety is for the jury to decide.
 
 
 20
 Caterpillar v. Ford, 406 So.2d 854 (1981) is instructive on this issue. In that case, a strip miner was killed when his Caterpillar B8H tractor rolled over three-fourths of a turn and crushed him to death. His widow sued alleging that the tractor was defective under the AEMLD because it did not have a roll-over protection structure (ROPS) which would have prevented the accident. The Alabama Supreme Court held that a scintilla of evidence was presented which justified the trial court's actions in sending the case to the jury. Even though the evidence necessary to send the case to the jury in Caterpillar under the scintilla rule was lower than the standard necessary in the instant case, the language employed by the Alabama Supreme Court is instructive:
 
 
 21
 There was evidence that caterpillar had knowledge of the potential of the B8H tractor to roll over and that a ROPS was effective in preventing injury or death in such accidents. It was also established that Caterpillar, as of July, 1970, offered a ROPS as optional equipment but did not install it as a standard feature of the B8H tractor. There was evidence from which a jury could conclude that the failure to include some protection against roll overs rendered the tractor defective.... We conclude that both issues were for the jury and that the evidence supports a finding by it that the tractor was defective.
 
 
 22
 Caterpillar at 856.
 
 
 23
 In this case, we cannot say that the evidence pointed so strongly in Electrolux's favor that the issue should not have been presented to the jury. Reasonable minds could have differed as to whether Electrolux's chain saw was defective because it did not have a chain brake. We hold that the district court did not err in denying Electrolux's motions for directed verdict and for judgment notwithstanding the verdict.
 
 B. Assumption of Risk
 
 24
 Electrolux also contends that the district court erred in denying its motion for directed verdict and its motion for judgment notwithstanding the verdict based on an assumption of risk defense. Electrolux relies on Pressley v. Sears Roebuck Co., 738 F.2d 1222 (11th Cir.1984) to support its contention. We are not persuaded because Pressley construed Georgia's product liability law which is significantly different from Alabama's product liability law.
 
 
 25
 In Pressley, where the operator of a riding mower who was injured while operating the machine brought an action against the manufacturer alleging that the mower was defective because it did not have a "deadmans control" device which would have prevented the injury, we held that liability could not attach because the danger was "open and obvious." Pressley, at 1224.
 
 
 26
 Under the AEMLD, however, a product may be found defective even if its danger is open and obvious. Ford Motor Co. v. Rodgers, 337 So.2d 736 (Ala.1976); Casrell v. Altec; Atkins v. American Motors Corp. Therefore, when the assumption of risk defense is asserted in Alabama, more must be shown than open and obvious danger for manufacturers to escape liability. On this point the Alabama Supreme Court stated:
 
 
 27
 While there is a distinction between contributory negligence and assumption of risk, certain elements are common to both. One such element is that there must have been an appreciation or consciousness of the danger with which the risk is attended.
 
 
 28
 Caterpillar, at 857 (emphasis added).
 
 
 29
 Therefore, the inquiry in the instant case, unlike in Pressley, is whether the plaintiff appreciated the danger in using the manufacturer's product.
 
 
 30
 Electrolux presented evidence that Nettles had been injured by kick backs before; that he knew of the existence of chain brakes and that he had the option of using a saw equipped with a chain brake on the day he was injured. Nettles put on evidence to show that he did not appreciate the danger of using a chain saw without a chain brake due to illiteracy and a low level of intelligence.
 
 
 31
 We cannot say that the district court erred in denying Electrolux's motion for directed verdict and judgment notwithstanding the verdict in light of a defense of assumption of risk. In some other jurisdiction, Electrolux's defense would have prevailed. But under Alabama law, reasonable minds could indeed differ as to whether Nettles assumed the risk in operating the Husqvarna chain saw without a chain brake.
 
 C. Contributory Negligence
 
 32
 Electrolux also asserted contributory negligence as a defense. Under Alabama law, Electrolux has the burden of proof on this claim. Caterpillar at 857.
 
 
 33
 To carry its burden of proof, Electrolux presented evidence that Nettles was injured because he used the saw improperly. Several of Nettles's co-workers testified that Nettles was injured because he cut an oak sapling caught in a bind, thereby causing the sapling to spring up and knock the chain saw into his arm. Nettles claims that he did not use the saw improperly.
 
 
 34
 Given the conflicting testimony, the district court properly submitted the issue to the jury. The evidence may have supported a verdict for Electrolux, but it also supports the verdict rendered for Nettles. See Caterpillar at 857.
 
 III. ERRORS RELATING TO INSTRUCTIONS
 
 35
 Electrolux objected to two portions of the district court's jury charge. The first contested passage reads:
 
 
 36
 Furthermore, the manufacturer is not required to furnish an accident free product, nor are they required to incorporate the ultimate in safety devices unless to do so is practical. An automobile is a dangerous instrumentality. There may be devices which can be placed on it which would make it safer. But, unless it would be practical to equip automobiles with such safety devices they are not required to do so. In other words, a manufacturer, be it a chain saw or an automobile or any other device, is not required to make the device accident proof. [Emphasis added.]
 
 
 37
 Electrolux specifically objected to the "unless to do so is practical" phrase. Electrolux contends that it has never been the law in Alabama that, if practical, a manufacturer has a duty to put safety devices on its products. The charge constituted reversible error, in Electrolux's view, because the court, in effect, directed a verdict in Nettles's favor.
 
 
 38
 While it is true that the court's language cannot be found in any cases, the charge taken as a whole is a correct statement of the law. We have already examined Alabama products liability law and find it unnecessary to do so again. We simply point to Caterpillar to show that the charge was correct. The manufacturer in Caterpillar was subjected to liability because he failed to equip his product with a practical safety device. A manufacturer may not be "required" to make his product as safe as possible under Alabama law, but if it does not, it may be liable. The district court noted that in some instances it is impractical for a manufacturer to incorporate the ultimate in safety devices, and in those situations, a manufacturer cannot be held liable.
 
 
 39
 The charge did not engender confusion. A reasonable juror would know, given the context, that the charge refers to what is practical for a manufacturer to do. The whole of the disputed charge concerns the manufacturer's duties. If practical, manufacturers must make their products as safe as possible or subject themselves to liability. That is the law in Alabama. That is what the charge stated.
 
 
 40
 The second contested portion of the charge read:
 
 
 41
 The defendant in this case brought evidence that chain brakes were available for chain saws as optional equipment at the time the chain saw in question was sold. If you find from the evidence that the chain saw in this case was unreasonably dangerous without a chain brake then I charge you that that is no defense, and that Electrolux Motor A.B. cannot escape liability by showing that a chain brake could have been, but was not purchased with the saw.
 
 
 42
 Electrolux argues that this charge is argumentative and misleading, and that it obliterates the assumption of risk defense. Electrolux offered as a defense to liability the fact that it offered chain brakes as optional equipment. The court correctly charged the jury that the availability of optional safety equipment is no defense if a product is found unreasonably dangerous. The Caterpillar court stated that "if the [product] was defective in the condition in which it was sold, liability for resulting injury cannot be escaped by showing that the customer could have but did not buy an item which would have removed the defect." Caterpillar at 857. Moreover, the district court in this case gave a separate adequate charge relating to assumption of risk.
 
 IV. ERRORS IN RULINGS ON EVIDENCE
 
 43
 Electrolux also contends that the district court erred on two evidentiary rulings. First, Electrolux objected to Olof Goeransson's testimony that Swedish regulations required chain brakes on chain saws in 1978. Electrolux argues that the testimony was irrelevant, highly prejudicial, and constituted reversible error. Nettles sought to show that Electrolux knew first hand that chain brakes were very beneficial. Olof Goeransson's testimony was relevant to that issue.
 
 
 44
 District courts are given discretion to determine when the benefits of such evidence outweighs the chance that confusion or prejudice will result from its introduction. Fed.R.Evid. 403. The district court in this case did not abuse its discretion.
 
 
 45
 Finally, Electrolux argues that the district court committed reversible error by admitting hearsay evidence. Nettles called Sidney Esco, claims adjuster for the Alabama Forest Products Workman's Compensation Self Insurers Fund, to the stand and elicited testimony that of the fifty kickback injury files that she had "seen" in her office, forty-nine involved Husqvarna chain saws.
 
 
 46
 We agree with Electrolux that Esco's testimony was hearsay, that the district court erred in admitting it. We disagree, however, with Electrolux's contention that this case should be reversed and remanded due to the erroneous evidentiary ruling. No error in the admission of evidence is grounds for granting a new trial or disturbing a judgment "unless refusal to take such action appears to the court inconsistent with substantial justice." Fed.R.Civ.P. 61.
 
 
 47
 Esco's testimony amounted to prejudicial hearsay because it focused the jury's attention on an irrelevant issue: Whether Husqvarna chain saws were more defective than other chain saws. The district court, however, charged the jury that the issue for its determination was whether the Husqvarna chain saw was defective because it did not have a chain brake. Given the court's correct instructions, it is highly unlikely that the jury gave Esco's testimony undue consideration. Therefore, our refusal to reverse and remand here will not result in a denial of "substantial justice" to Electrolux.
 
 Conclusion
 
 48
 The judgment entered on the verdict finding Electrolux liable to Nettles under the Alabama Extended Manufacturers Liability Doctrine is affirmed.
 
 
 49
 AFFIRMED.
 
 
 
 [1]
 A "kick back" is an abrupt movement of a chain saw caused when the bar of the saw strikes an object the chain cannot cut, thereby causing the rotational movement of the chain to reverse. Since chain saw chains move away from the operator, the saw is usually thrown up toward the operator
 
 
 [2]
 A chain brake is a mechanical device designed to reduce the chance of being injured when a chain saw kicks back. When the mechanism is activated, a metal band encircling the clutch drum snaps down upon the drum bringing the chain to a halt. If operating properly, the chain brake will stop the chain from turning by the time the chain and bar strike the operator, thereby reducing the amount of injury to the operator as a result of kick back
 
 
 [3]
 The jury determined that of the $90,000 damage recovery, $50,000 was for lost wages. The parties stipulated that the award for lost wages should be reduced to a present value of $23,000 for a total judgment entered in the amount of $63,000. Pursuant to this stipulation, the district court entered judgment against Electrolux in the amount of $63,000
 
 
 [4]
 "Low kick back" chains are designed to lessen the severity of kick back injuries by reducing the force of kick backs
 
 
 [5]
 Nettles called Goransson to the witness stand and elicited the following testimony:
 Q. Mr. Bailey said that Electrolux Motor--or as I recall it, he said that Electrolux Motor A.B., your company, does prefer, and does think that chain brakes ought to be on chain saws, right?
 A. Yes.
 Q. Then you are admitting to us that a chain brake is a desirable safety device?
 A. Yes sir.
 Q. And, that every chain saw in use ought to have one on it?
 A. That depends. In the United States, the new standards I was referring to will be in force in some months but will not mandate the use of chain brakes.
 Q. I am talking about your personal opinion and your company's opinion, not what some standards organization might say, but just what you think. Isn't it true, Mr. Goransson, that you believe that a chain brake is of such significance as a safety device that it ought to be on a chain saw?
 A. We like to have our customers to buy saws with a chain brake, that was why we made them standard equipment in the U.S. in 1982.
 Q. So, on all saws that were shipped to the United States as of 1982 you have gotten chain brakes on every one of them?
 A. That's correct, yes.