**Lawrence DEVINER,**
**Plaintiff–Appellant,**

v.

**ELECTROLUX MOTOR, AB, et al.,**
**Defendants–Appellees.**

**No. 87–7288.**

United States Court of Appeals,
Eleventh Circuit.

May 6, 1988.

Joe R. Whatley, Jr., Falkenberry, Whatley & Heidt, Birmingham, Ala., for Deviner.

Dennis R. Bailey, Rushton, Stakely, Johnston & Garrett, Montgomery, Ala., for Electrolux Motor AB.

Eugene P. Stutts, Sadler, Sullivan, Sharp & Stutts, Birmingham, Ala., for Huskipower.

Before JOHNSON and CLARK, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge:

Appellant (plaintiff below) was injured when a chain saw manufactured and distributed by appellees allegedly kicked back and cut the top of his right wrist. The chain saw was manufactured by Electrolux in Sweden in 1981 and sold to appellant's employer. When sold it was not equipped with a chain brake. Chain saws frequently kick back when something which the teeth do not cut readily is encountered, and a chain brake stops the movement of the chain, so that when impact of the saw with the user's body takes place the cutting

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

teeth will be at rest rather than in motion. Use of chain brakes was mandatory in 1981 in Sweden for domestically used chain saws[1] but not on those exported to the United States; nor was a chain brake required by law in the United States.

Appellant's complaint alleged, *inter alia,* violation of the Alabama Extended Manufacturer's Liability Doctrine.[2] This is the only issue upon which the case went to the jury. The jury's verdict was in favor of the defendants.

At trial, upon the close of appellant's evidence, the District Court granted defendants' motions for directed verdict on all claims except the one based on the Extended Manufacturer's Liability Doctrine.[3] The District Court denied appellant's motion for a directed verdict on the theory of collateral estoppel.[4] Appellant contended that the same model of chain saw had been held to be defective in *Nettles v. Electrolux Motor AB,* 784 F.2d 1574 (11th Cir.1986). This ruling is assigned as error.

The case then went to the jury on the single issue of liability under the Extended Manufacturer's Liability Doctrine[5] and the

verdict of the jury was in favor of the defendants.[6] That verdict is not challenged on this appeal.

Instead, appellant raises three challenges:

"(1) To the directed verdict granted by the trial court;

(2) To the granting of a motion *in limine* and other evidentiary rulings by the trial court; and

(3) To the refusal of the trial court to apply collateral estoppel."[7]

With respect to the first challenge, appellant stresses the point that there might have been sufficient evidence to establish "wanton" injury, defined as action in "conscious disregard of known conditions of danger." Hence, he contends, the trial court erred "in granting the directed verdict on the claim for wanton injury."[8]

One manifest weakness of this argument is that there was no claim for wanton injury alleged in the case at bar. The six claims set forth in the complaint do not mention "wanton injury" at all.[9] Hence the authorities cited by appellant to show the distinctions between negligence and

1. Chain brakes became mandatory in Sweden in 1978. Plaintiff's offer of proof, extract of testimony of Olof Goransson, quality manager of Electrolux, in *Nettles* case, p. 108.

2. Claim One of the Complaint alleged negligent design; Claim Two failure to warn; Claim Three negligent assembly; Claim Four negligent inspection; Claim Five the Alabama Manufacturer's Extended Liability Doctrine; and Claim Six breach of warranty. A pretrial order of January 7, 1987, was made; and on March 30, 1987, the District Court ruled on a motion *in limine* to exclude (1) evidence that after the saw in the case at bar was sold Electrolux began shipping saws with chain brakes; and (2) evidence that "The Swedish directions resulted in all saws sold to [Swedish] logging companies after 1978 being equipped with chain brakes. Swedish Standards are not relevant in a U.S. product liability case involving a saw sold in the U.S. in 1981. Rule 401, and 402." The Court overruled the motion as to (1) but granted it as to (2). This ruling is assigned as error by appellant.

3. Tr., II, 227.

4. Tr., II, 226.

5. This is a doctrine established in Alabama case law substantially equivalent to section 402–a liability as set forth in the American Law Institute Restatement of Torts.

6. The jury apparently accepted the defense contention that causation had not been proved, and found credible the evidence that a "kickback" type of injury would not have injured a right-handed logger (as appellant was) on the *right* wrist, where appellant was injured. There was also evidence that appellant was an experienced logger [he testified he had had 17 years experience using chain saws (Tr. 28)], and evidence (contradicted by appellant) that in 1986 when furnished a chain saw equipped with a chain brake he removed the safety device because it gets in the way when operating the saw. (Tr. 59, 65–66, 323–24). Failure to prove causation would defeat *all* claims asserted by appellant, but contributory negligence is not a bar if wantonness is proved. *Brown v. Turner.* 497 So.2d 1119 (Ala.1986)

7. Appellant's Brief, p. 6.

8. Appellants' brief, p. 10.

9. See note 2, *supra.*

wanton injury [10] really work to appellant's disadvantage by tending to indicate that a separate specific allegation of wanton injury would be required to constitute a well pleaded claim if plaintiff is relying upon an injury distinct from ordinary negligence or liability under the Extended Liability Doctrine.

■ Nevertheless, the pretrial order of January 7, 1987, explicitly states that each defendant "is charged with wanton injury to the plaintiff." In the colloquy preceding the District Court's ruling on motions, defense counsel made a separate motion for directed verdict on the wantonness claim, as well as other claims, and the District Court granted "the motion with respect to each claim other than the claim based upon the Alabama Manufacturer's Liability Doctrine." [11] Subsequently, in the District Court's charge it was plainly stated that: "The claim of wanton injury originally made by the plaintiff is not supported by any evidence, and I have granted a directed verdict on that charge." [12] This indicates that the trial court is making a substantive ruling on the merits of the claim. Appellees therefore can not claim to be taken by surprise to their detriment. The issue was passed upon by the District Court. Hence we must scrutinize the record to determine whether or not there is sufficient evidence of wanton injury, as defined by Alabama law, to warrant submission of that claim to the jury.[13] Having done so, we conclude that the District Court's determination is correct.

The nature of a cause of action for wantonness is fully explained in *Lynn Strickland Sales v. Aero–Lane Fabricators, Inc.*, 510 So.2d 142, 145 (Ala.1987):

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. The element of intent, or knowledge, is not present in simple negligence, and the element of intent does not raise a person's conduct to merely a greater degree of negligence as, for instance, gross negligence. As the Court stated in *Smith v. Roland*, 243 Ala. 400, 403, 10 So.2d 367, 369 (1942), *quoting* 5 Mayfield's Digest, p. 711, section 6: " 'Gross negligence' is negligence, not wantonness. Before one can be convicted of wantonness, the facts must show that he was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, that with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury."

Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. "Simple negligence is the *inadvertent* omission of duty; and wanton or wilful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted." *McNeil v. Munson S.S. Lines*, 184 Ala. 420, 425, 63 So. 992 (1913). "Simple negligence, 'the inadvertent omission of duty', is not an element of wantonness." *Atlantic Coast Line R.R. v. Barganier*, 258 Ala. 94, 101, 61 So.2d 35 (1952).

---

10. See *Lynn Strickland Sales and Service, Inc. v. Aero–Lane Fabricators, Inc.*, 510 So.2d 142 (Ala. 1987).

11. Tr., III, 227.

12. Tr. III, 364. Defendants made no objection to the charge when given an opportunity to do so. *Ibid.*, 370.

13. This inquiry necessarily overlaps to some extent with appellant's second challenge to the exclusion of evidence *in limine*, as the excluded evidence covered by plaintiff's offer of proof might have contained the straw that would have broken the camel's back and supplied sufficient evidence to go to the jury.

The distinction between wantonness and negligence has a long history in our case law. In *Sington v. Birmingham Ry. Light & Power Co.*, 200 Ala. 282, 284, 76 So. 48 (1917), the Court stated:

"An act or omission is simple negligence or a wanton or intentional wrong according to the absence or presence of the mental state of the person who did or omitted to do that which duty required in the premises, and, if the person intended to inflict the injury or did the act with a knowledge and consciousness that his doing of the act or omitting to act will likely result in injury to another, he is guilty of willful or wanton misconduct or omission, and is not guilty of simple negligence."

As summarized by this Court in *Cook v. Branick Mfg. Inc.*, 736 F.2d 1442, 1448 (11th Cir.1984):

Under Alabama law wantonness is the conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some duty which produced the injury.

*Schuler v. Nelson Weaver Cos.* 270 Ala. 727, 121 So.2d 908, 909 (1960). The defendant's state of mind distinguishes wantonness from negligence claims. Negligence requires only that the defendant *should have known* of a dangerous condition whereas "[w]antonness may arise from *knowledge* that persons ... are likely to be in a position of danger." *W.T. Ratliffe Co. v. Purvis*, 292 Ala. 171, 291 So.2d 289, 292 (1974). The Alabama courts have stated that negligence and wantonness are mutually exclusive. *Thompson v. White*, 274 Ala.

413, 149 So.2d 797, 804 (1963). Consequently, although intuition might suggest otherwise, those courts have held that an erroneous directed verdict on the issue of wantonness is not cured by a jury's finding that the defendant was not negligent. *Canida v. U.S. Reduction Co.*, 294 Ala. 193, 314 So.2d 279 (1975).

As with an action in negligence, a predicate to a finding for the plaintiff on a wantonness claim is that the defendant did some act or *omitted some duty* that caused the injury. We have held above that Bandag properly discharged its duty to warn when it informed Cook's employer of the hazards of using a curing rim without a safety pin. Consequently, Bandag omitted no duty and cannot be liable for either negligence or wantonness.

As in *Cook*, so in the case at bar, appellees properly discharged their duty to warn when Deviner's employer (Benny Young) was given information regarding the available safety devices. Tr. 42–43. Hence appellees, having omitted no duty, can not be liable for wantonness. The District Court thus properly found no evidence in the record to substantiate the claim of wanton tortious or wrongful misconduct.

Appellants' second challenge on this appeal is to the District Court's ruling *in limine* excluding evidence that, after Swedish law in 1978 made chain brakes mandatory, Swedish experience showed a reduction in the number and severity of chain saw injuries.[14]

■ The District Court's desire to avoid confusing the jury with Swedish law and statistics cannot rightly be described as abuse of discretion, when the issues arising under Alabama and federal law and the technical questions of fact regarding the logging business and the operation of chain saws are sufficient to keep the minds of the jurors alert to the problems confronting them in the case at bar.

**14.** With respect to plaintiff's offer of proof at trial, objection to PX–9 was sustained. Tr., II, 16.

774

In any event, error in this instance would be harmless, as in cross-examination of witnesses there was considerable discussion of the diminution in number and severity of injuries in Sweden and Canada and the various possible reasons to explain the phenomena experienced in the logging industry of those countries.[15] The trial court's broad discretion in admitting or excluding evidence was emphasized in *Nettles v. Electrolux Motor AB*, 784 F.2d 1574, 1580–81 (11th Cir.1986), citing Rule 403 FRE and Rule 61 FRCP. See also *Parklane Hosiery*, cited in note 17, *infra*. That discretion was not abused in the case at bar.

Appellant's third challenge is to the District Court's unwillingness to foreclose trial of the facts in the case at bar by applying the doctrine of collateral estoppel and holding that the chain saw used by plaintiff was defective because a similar piece of equipment was found to be defective in *Nettles v. Electrolux*, 784 F.2d 1574, 1577–78 (11th Cir.1986). That case discussed the Alabama Manufacturer's Extended Liability Doctrine and pointed out that a product is "defective" under that doctrine "if it does not meet the reasonable expectations of ordinary consumers as to its safety." Likewise it was there said: "Whether a product meets reasonable expectations as to safety is for the jury to decide."

In *Nettles* the jury decided the question under the Extended Liability Doctrine in favor of the plaintiff Nettles. But in the case at bar the jury to whom that issue was submitted decided in favor of defendants. It would be an unusually ingenious quirk in our system of justice, which attaches special sanctity to jury verdicts,[16] if it permitted appellant to circumvent the unfavorable jury verdict against him by applying *via* a doctrine of estoppel the verdict of a different jury in a different case.

The doctrine of collateral estoppel developed in patent cases and is useful in preventing the relitigation of questions once thoroughly canvassed and determined, such as the validity of a patent.[17] It should not be extended indiscriminately to tort cases where the factual circumstances in each case differ and no hard and fast legal standard has emerged from the developing case law.[18]

The fact that various conflicting decisions have been reached by other juries on the chain brake issue (as well as the somewhat questionable status of the *Nettles* verdict in view of a juror's effort to explain it)[19] counsels against attempting to crystallize the state of Alabama law for all time by choosing *Nettles* as the controlling verdict. Too much varies with the circumstances and facts proved in each case with respect to the skill, experience, conditions in the workplace, objectives to be accomplished in execution of the task at hand, and *modus operandi* of the chain saw operator in each instance.

Accordingly, the judgment of the District Court is

AFFIRMED.

**15.** Tr., III, 263–65, 271–73.

**16.** The Seventh Amendment to the Constitution of the United States provides that: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right by trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

**17.** *Blonder–Tongue v. University Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971); *Parklane Hosiery v. Shore*, 439 U.S. 322, 329–31, 99 S.Ct. 645, 650–51, 58 L.Ed.2d 552 [trial court should have broad discretion over offensive collateral estoppel] (1979); *Montana v. U.S.*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979), related to patent law, securities regulation, and taxation, respectively.

**18.** Of course, as Holmes wrote long ago, a series of cases involving a particular set of facts frequently repeated may result in the development of a new and more specific legal standard of conduct. O.W. Holmes, Jr., *The Common Law* (Boston: Little, Brown, and Company, 1881) 123–29. This situation is not presented as yet, however, by the chain saw cases.

**19.** See the cases listed in Appellees' brief, 33–35, 49.