[952 NYS2d 26]

WILDER SELZER, Respondent, v NEW YORK CITY TRANSIT AUTHOR-
ITY, Appellant.

First Department, October 4, 2012

158

## APPEARANCES OF COUNSEL

*Armienti DeBellis Guglielmo & Rhoden LLC*, New York City (*Vanessa M. Corchia* of counsel), and *Wallace D. Gossett*, Brooklyn, for appellant.

*Langsam Law*, New York City (*Kenneth J. Gorman* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

This appeal arises out of a personal injury action in which the plaintiff alleges that he sustained injuries as he was exiting a subway car on the R train at Whitehall Street, Manhattan. At trial, the plaintiff testified that the defendant's conductor negligently closed the doors on his ankle. The conductor of the train testified that he followed the correct procedures as to opening and closing subway doors, and that nothing out of the ordinary happened on the day of the plaintiff's accident. There were no witnesses to the incident according to the plaintiff, other than the "O-mouthed" passengers remaining on the train as it pulled out of the station. As the motion court acknowledged, this case from the beginning rested on a credibility issue.

The record reflects that at trial, the defense counsel advanced the theory that the plaintiff's account of his accident was implausible. In his opening remarks, the defense counsel told the jury, without objection, that the evidence would establish that "the only way [the accident] could have happened was because of some fault on the part of the plaintiff." Defense counsel told the jury "just use your common sense to try to understand the mechanics of something like this happening."

The plaintiff testified as follows: On May 11, 2007, he was getting ready for an evening performance in Manhattan when he realized he had to return to his home in Staten Island to retrieve a forgotten item of clothing for the performance; he boarded the R train at 23rd Street station for the 20 to 25 minute trip to Whitehall Street, the last stop in Manhattan before the train continued to Brooklyn; he had not brought a book or video game with him, but he was "going over the show . . . in [his] mind and thinking about it."

The plaintiff testified that upon reaching Whitehall Street, he exited the subway car at a normal pace. He described the accident as follows:

"I put my left foot onto the platform, and then as I

was passing through the doorway[,] I felt an impact and I fell forward onto my hands . . .

"When I looked out at the subway car[,] I saw that my leg was still on the subway and that I was lying on the ground, and then I saw the faces of the people in the car who all looked very surprised, their faces were all in an O-mouthed expression of surprise . . .

"I pulled the leg off of the train[,] and almost immediately after the train doors closed and the train took off."

In cross-examining the plaintiff, the defense counsel attempted to show that the plaintiff's right ankle was caught in the subway door because the plaintiff was not paying attention and moved to exit the subway car too late rather than because the train conductor negligently closed the doors as the plaintiff was exiting the subway car. Further, defense counsel attempted to elicit the fact that the plaintiff could not risk failing to alight at the last stop in Manhattan. For example, defense counsel asked whether "White Hall Street station is the last stop . . . in Manhattan in order to get to the ferry," and whether if he missed that stop, he would "have to travel [all the way] to Brooklyn."

The conductor of the train on which the plaintiff alleged he was riding testified that on the day of the accident he followed the procedures that are in place for all conductors with respect to the opening and closing of doors. Conductors open the doors using two buttons on the master control panel; they wait for a specified time, then make an announcement to stand clear of the closing doors, and then they close the doors. The conductor testified that the lights on the panel would indicate if the doors had not closed. The conductor further testified that he did not remember seeing anyone fall or get caught in the doors in the Whitehall Street station at or around the time that the plaintiff allegedly incurred the injury.

In summation, the defense counsel posited that the plaintiff "jetted out" of the train at the last second. Defense counsel stated, "I am not a witness. What I say is not testimony. I'm only giving it to you to ponder." He continued:

"After all, if you imagine a person standing in a doorway just standing there when the doors closed— and all of you [have] seen this happen[ ] and I know

this, during jury selection, you've all seen doors close on people and passengers, okay. You know what happens. It's the upper part of the person's body that's contacted."

At this point, the plaintiff objected, and the court sustained the objection. Then the defense counsel continued:

"[B]ecause as I said in my opening, the plaintiff's body was outside of the train at the time of the occurrence. Why was it that way? I have no idea but it wasn't because his leg just happened to be at a particular point that it could be grabbed and held . . .

"Think about it, how it happened. If he were going through, the upper part of his body would have been hit and would have been the contact point, his arm, shoulder or something like that."

The plaintiff objected again, and the court sustained the objection. The defense counsel then completed his sentence: "But not his leg."

At this point, the court repeated that it had sustained the objection. Defense counsel stated: "There is no other way I see it. You can—you're the triers of the facts. You may decide otherwise."

The court instructed the jury that a finding of the defendant's negligence would require the jury to decide that the plaintiff was not jumping off the train at the very last minute. Moreover, it observed that the case rested on a credibility issue. In other words, the jury would have to decide which witness it found credible—the plaintiff or the train conductor—since their accounts conflicted. Specifically, the court instructed the jury, consistent with the Pattern Jury Instructions, as follows:

"[I]n deciding how much weight you choose to give to the testimony of any particular witness, . . . [t]he tests used in your everyday affairs to decide reliability or unreliability of statements made to you by others are the tests you will apply in your deliberations . . . You bring with you to this courtroom all of the experience and background of your lives."

Subsequently, the jury rendered a 5-1 verdict in favor of the defendant. The plaintiff moved pursuant to CPLR 4404 to set aside the verdict on the grounds that defense counsel's improper conduct deprived the plaintiff of the right to a fair trial; that the jury verdict was against the weight of evidence; and that

the verdict was not supported by sufficient evidence. In support of the motion, the plaintiff offered the affidavit of a dissenting juror, who stated that the comments of other jurors reflected those of the defense counsel that the accident happened because the plaintiff was "rushing" out of the train.

By order dated May 18, 2011, the motion court set aside the defense verdict and ordered a new trial. The court in its decision included verbatim the defense counsel's summation comments, as set forth above, and held that the defense counsel "created an atmosphere that deprived the plaintiff of a fair trial, not by an isolated remark during summation, but by continual and deliberate efforts to divert attention from the issues." (31 Misc 3d 1236[A], 2011 NY Slip Op 51015[U], *5.) Contrary to its view when charging the jury that the case rested on a credibility issue, the court noted instead that "[g]iven the plausible, uncontradicted evidence from plaintiff that the accident occurred in the manner he claimed, and not in the manner which defense counsel asserted, substantial justice would not be done if the verdict were permitted to stand." (2011 NY Slip Op 51015[U], *3.) It further held that "[t]he inflammatory and prejudicial comments made by defendant's counsel so contaminated the proceedings as to deny plaintiff his right to a fair trial," and that the counsel "so tainted the course of the trial that he effectively destroyed any chance for a fair outcome by interjecting his own view of the facts to the jury." (*Id.* at *5.)

■ For the reasons set forth below, we reverse and reinstate the verdict in favor of the defendant. As a threshold matter, the defendant correctly asserts that the issue of counsel's alleged "misconduct" was unpreserved because the plaintiff raised the claim for the first time in his motion to set aside the verdict. (*See Califano v City of New York*, 212 AD2d 146, 152-153 [1st Dept 1995].)

However, under CPLR 4404 (a), the motion court has the discretion to set aside the verdict and order a new trial "in the interest of justice." The use of such discretionary power is warranted when the aggrieved party is deprived of substantial justice or a counsel's misconduct unduly affected the verdict. (*Micallef v Miehle Co., Div. of Miehle-Goss Dexter*, 39 NY2d 376, 381 [1976].)

■ Here, we conclude the motion court erred in finding that the defense counsel's remarks "contaminated" the proceedings and thereby deprived the plaintiff of his right to a fair trial. Accordingly, we find that the motion court abused its discretion in setting aside the verdict.

It is well established that a counsel is afforded wide latitude in summation to characterize and comment on the evidence. (*Chappotin v City of New York*, 90 AD3d 425, 426 [1st Dept 2011], *lv denied* 19 NY3d 808 [2012].) Defense counsel remains "within the broad bounds of rhetorical comment in pointing out the *insufficiency* and *contradictory* nature of a plaintiff's proof" without depriving the plaintiff of a fair trial. (*Id.* [emphasis added].) Furthermore, making a reference to alternative ways in which evidence can be interpreted may constitute a "fair comment upon the evidence." (*Cerasuoli v Brevetti*, 166 AD2d 403, 404 [2d Dept 1990] [holding that remarks suggesting other ways in which needle could have been embedded in plaintiff's abdomen were fair comments upon evidence, in medical malpractice action].)

While there are certain boundaries to the counsel's latitude (*see Caraballo v City of New York*, 86 AD2d 580, 581 [1st Dept 1982]), the defense counsel in this case did not exceed those boundaries. Counsel's remarks on summation simply did not amount to an argument based on facts not in the record. (*See e.g. Benson v Behrman*, 248 AD2d 153, 154 [1st Dept 1998] [upholding "restraining plaintiff's counsel from straying outside four corners of the evidence and offering his own speculation on summation"]; *see also People v Marin*, 102 AD2d 14, 33 [2d Dept 1984], *affd* 65 NY2d 741 [1985] [holding that verdict cannot stand based on speculation and conjecture].) The defense counsel merely argued that the plaintiff's account of the accident did not make sense, pointing out the insufficient and contradictory nature of his testimony. Thus, his summation was directed at the credibility of the plaintiff's testimony, and was not an interjection of the counsel's own view of the facts. The plaintiff, as the sole witness to the accident, claimed that the doors shut only on his right ankle while he was exiting the subway car at a normal pace. The defense counsel simply posited that in the normal course of events the doors would close on the upper part of an individual's body if the person was walking out of the subway car at a normal pace because the upper body is wider than the right leg.

Moreover, the defense counsel's suggestion that the jurors consider their own experience of using the subway does not render his arguments speculative or conjectural. Jurors are required to evaluate conflicting evidence and draw conclusions therefrom based on their day-to-day experiences. Notably, that was precisely what the motion court instructed the jury to do.

We also find that the counsel's remarks that the accident happened because the plaintiff was "jet[ting] out" of the train constituted a fair comment on the evidence. As in *Cerasuoli*, defense counsel referred to an *alternative* way in which the doors could shut only on the right leg. (*See* 166 AD2d at 404.)

Further, the defense counsel did not make any statements that were designed to inflame the jury's passion, which would result in the jury deciding the case on an emotional rather than rational basis. (*See cf. Minichiello v Supper Club*, 296 AD2d 350, 352 [1st Dept 2002] [holding that the misconduct of plaintiff's counsel warranted mistrial when counsel analogized a witness to a Nazi].) On the contrary, defense counsel specifically asked the jurors to evaluate the plaintiff's account of the accident consistent with their own experiences of seeing subway doors close.

Finally, defense counsel did not make any character attacks on the plaintiff or the plaintiff's witnesses. (*See cf. Steidel v County of Nassau*, 182 AD2d 809, 814 [2d Dept 1992] [new trial when counsel referred to opposing expert as "hired gun" whose idea of truth and justice is that "this is a game to be played"].) In order to warrant a mistrial, an ad hominem attack must be extreme and pervasive. (*See Chappotin*, 90 AD3d at 426 [denying mistrial where defense counsel referred to plaintiff as a man who has played the system for 15 years without concerns about medical care or jobs].)

Here, the defense counsel primarily attempted to undermine the credibility of the plaintiff's testimony based on its inherent contradictions, and not by a character attack on the plaintiff. Thus, we conclude that the motion court erred in finding that defense counsel's conduct deprived the plaintiff of his right to a fair trial.

◼ With respect to the juror affidavit, we note that the motion court erroneously considered the dissenting juror's postverdict affidavit in its determination of the motion. "Juror affidavits should not be used to impeach a jury verdict absent extraordinary circumstances." (*Martinez v Te*, 75 AD3d 1, 7 [1st Dept 2010], citing *Mosher v Murell*, 295 AD2d 729, 731 [3d Dept 2002], *lv denied* 98 NY2d 613 [2002]; *see also Hersh v New York City Tr. Auth.*, 290 AD2d 258 [1st Dept 2002] [affirming mistrial for juror confusion not based on juror affidavits but based on verdict sheets and juror questions].) A court may take into account juror affidavits only to clarify errors in deliberation, such as when juror confusion is apparent from a nonsensical verdict or there are obvious errors such as omissions or

confusion on a special verdict sheet. (*See e.g. Porter v Milhorat*, 26 AD3d 424 [2d Dept 2006] [granting new trial in medical malpractice action where jury awarded future damages without filling out past damages in contradiction to instructions given on verdict sheet].)

█ In this case, there were no extraordinary circumstances to warrant the use of a dissenting juror's affidavit to impeach the verdict. The verdict was not "nonsensical" if the jurors accepted the subway conductor's testimony, and thus inferred that the plaintiff's leg was caught between the doors because he "jetted out" of the subway car at the last moment. Moreover, the jury verdict is supported by the circumstantial evidence that the plaintiff had reason to be in a hurry and could not "afford" to miss the last subway stop in Manhattan. Based on the evidence, the jury could reasonably infer that the plaintiff's haste at the last moment, not the conductor's negligence, caused the injuries. In making that inference, the jury did not need expert testimony since the way in which doors of a subway close is not outside the experience and knowledge of the average juror. (*See Ferguson v Mantell*, 216 AD2d 160, 161 [1st Dept 1995] [finding expert testimony proper when information provided is "outside the experience and knowledge of the average juror"].) For all of the foregoing reasons, we also reject the plaintiff's argument that the verdict in favor of the defendant was against the weight of the evidence.

Accordingly, the order of the Supreme Court, New York County (Joan M. Kenney, J.), entered May 31, 2011, which granted the plaintiff's motion pursuant to CPLR 4404 to set aside the jury verdict in favor of the defendant and ordered a new trial, should be reversed, on the law, without costs, the plaintiff's motion denied, and the verdict reinstated. The Clerk is directed to enter judgment dismissing the complaint.

SAXE, J.P., ACOSTA, DEGRASSE and RICHTER, JJ., concur.

Order, Supreme Court, New York County, entered May 31, 2011, reversed, on the law, without costs, the plaintiff's motion denied, and the verdict reinstated. The Clerk is directed to enter judgment dismissing the complaint.