■ ANTHONY ROCCO et al., Appellants, v NANCY AHMED, as Administrator of the Estate of NAEEM AHMED, Deceased, et al., Respondents. [45 NYS3d 161]—

In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from an order of the Supreme Court, Richmond County (Giaccobe, J.), dated September 13, 2012, which denied their motion pursuant to CPLR 4404 (a) to set aside a jury verdict in favor of the defendants and against them on the issue of liability and for a new trial.

Ordered that the order is modified, on the law, on the facts, and in the exercise of discretion, by deleting the provision thereof denying that branch of the plaintiffs' motion which was pursuant to CPLR 4404 (a) to set aside the jury verdict insofar as it was in favor of the defendants Nancy Ahmed, as administrator of the estate of Naeem Ahmed, and Srinivas Duvvuri, and against them on the issue of liability and for a new trial against those defendants, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed, with one bill of costs to the defendant Staten Island University Hospital payable by the plaintiffs, and one bill of costs to the plaintiffs payable by the defendants Nancy Ahmed, as administrator of the estate of Naeem Ahmed, and Srinivas Duvvuri, and the matter is remitted to the Supreme Court, Richmond County, for a new trial against the defendants Nancy Ahmed, as administrator of the estate of Naeem Ahmed, and Srinivas Duvvuri.

On November 6, 2006, Anthony Rocco was admitted into the defendant Staten Island University Hospital (hereinafter SIUH) based on a diagnosis of atrial fibrillation. An intensive care specialist who was a member of SIUH's hospital staff wrote an order admitting Rocco to SIUH. Rocco was prescribed heparin, an anticoagulant. Naeem Ahmed (now deceased) was the internist who cared for Rocco while he was in the hospital,

and he consulted with the defendant Srinivas Duvvuri, a cardiologist, about his care. By the time Rocco was discharged on November 8, 2006, the atrial fibrillation had stopped, and Duvvuri ordered that Rocco discontinue taking heparin. Four hours after being discharged from the hospital, Rocco suffered a stroke.

Rocco, and his wife suing derivatively, commenced this action against Ahmed, Duvvuri, and SIUH (hereinafter collectively the defendants), alleging, among other things, that they departed from accepted standards of medical care by discontinuing heparin. The plaintiffs alleged that the stroke had been caused by a blood clot, and that an anticoagulant, such as heparin, would have prevented the blood clot from forming. On June 3, 2006, about a month before the trial, Ahmed served a response to the plaintiffs' demand for expert witness information pursuant to CPLR 3101 (d), stating that a neuroradiologist would testify that Rocco's "stroke was not caused by his atrial fibrillation, his discharge without continued anticoagulation therapy, nor by a blood clot caused by atrial fibrillation that traveled to plaintiff's brain." On June 28, 2006, the plaintiffs' counsel requested further expert disclosure, but that request was denied. The plaintiffs moved to preclude the neuroradiologist's testimony, arguing that Ahmed's CPLR 3101 (d) expert witness disclosure was inadequate. That motion was denied.

During the opening statements at trial, the attorneys for Ahmed and Duvvuri argued that the evidence would show that the stroke had been caused by calcification, not a blood clot. Ahmed presented the expert testimony of Carne Jahre, a neuroradiologist, who testified that the stroke had been caused by a piece of calcium that had blocked an artery in Rocco's brain. The jury rendered a verdict in favor of the defendants and against the plaintiffs on the issue of liability, and the plaintiffs moved pursuant to CPLR 4404 (a) to set aside the verdict. In support of their motion, the plaintiffs argued that the court erred in admitting Jahre's testimony because Ahmed's CPLR 3101 (d) disclosure failed to inform them that the expert would testify that the stroke was caused by calcification. In the order appealed from, the Supreme Court denied the motion.

Under CPLR 4404 (a), a trial court has the discretion to order a new trial in the interest of justice (see Lariviere v New York City Tr. Auth., 131 AD3d 1130, 1132 [2015]). "In considering whether to exercise its discretionary power to order a new trial based on errors at trial, the court 'must decide whether substantial justice has been done, whether it is likely that the

verdict has been affected . . . and must look to [its] own common sense, experience and sense of fairness rather than to precedents in arriving at a decision' " (*id.* at 1132, quoting *Micallef v Miehle Co., Div. of Miehle-Goss Dexter*, 39 NY2d 376, 381 [1976]). On appeal, this Court is invested with the power to decide whether the trial court providently exercised its discretion (*see Lariviere v New York City Tr. Auth.*, 131 AD3d at 1132).

The Supreme Court improvidently exercised its discretion in denying that branch of the plaintiffs' motion which was pursuant to CPLR 4404 (a) to set aside the verdict in favor of Ahmed and Duvvuri and against the plaintiffs on the issue of liability. Pursuant to CPLR 3101 (d) (1) (i), Ahmed and Duvvuri were required to disclose "in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, . . . and a summary of the grounds for each expert's opinion." Here, Ahmed's expert witness disclosure only revealed expert testimony that Rocco's stroke was not caused by his atrial fibrillation or a blood clot, but did not inform the plaintiffs that the expert would testify that the stroke was caused by calcification. Ahmed failed to demonstrate good cause for not disclosing the substance of his expert's causation theory until trial (*see Durant v Shuren*, 33 AD3d 843, 844 [2006]; *Desert Storm Constr. Corp. v SSSS Ltd. Corp.*, 18 AD3d 421, 422 [2005]). The revelation of the defendants' causation theory at trial prejudiced the plaintiffs' ability to prepare for trial because they did not have adequate time to consult or retain an expert neuroradiologist (*see Durant v Shuren*, 33 AD3d at 844; *Lissak v Cerabona*, 10 AD3d 308, 310 [2004]).

The administrator of Ahmed's estate and Duvvuri contend that the expert testimony was not a surprise to the plaintiffs, since certain CT scan reports contained in the medical records documented that a blockage was formed by either a clot or calcium, and Duvvuri referred to those CT scan reports in his deposition. However, this documentation did not inform the plaintiffs of the defense expert neuroradiologist's testimony regarding his theory of causation. Furthermore, a previously undisclosed theory is not deemed admissible merely on the ground that it is mentioned in a plaintiff's medical records (*see Dalrymple v Koka*, 2 AD3d 769, 771 [2003]).

Duvvuri also contends that the error in admitting the expert testimony was harmless since the jury found that there was no departure from accepted standards of medical practice and did not reach the issue of causation. However, since the defend-

ants' belated revelation of their causation theory prejudiced the plaintiffs in preparing and presenting their case, the error cannot be deemed harmless (*see id.* at 771; *Bunting v Selesnick*, 300 AD2d 26, 27 [2002]).

The Supreme Court providently exercised its discretion in denying that branch of the plaintiffs' motion which was pursuant to CPLR 4404 (a) to set aside the verdict in favor of SIUH and against the plaintiffs on the issue of liability. In general, a hospital can only be held liable for the malpractice of its employees (*see Muslim v Horizon Med. Group, P.C.*, 118 AD3d 681, 682 [2014]). The intensive care specialist who admitted Rocco into the hospital was the only SIUH employee involved in this case. According to Rocco's medical records, that specialist only saw the plaintiff once when he admitted him into the hospital, and there is no evidence in the record that he rendered any care to Rocco thereafter. Therefore, the failure of Ahmed to serve a proper expert witness disclosure pertaining to the calcification theory of causation has no bearing on the jury's determination that SIUH was not liable for Rocco's injuries.

The plaintiffs' remaining contention has been rendered academic in light of our determination. Eng, P.J., Balkin, Sgroi and Barros, JJ., concur.